CHASEZ, Judge.
Mr. and Mrs. John T. Craig, the plaintiffs-appellees, sued the defendant-appellant, Montelepre Realty Company, Inc. for damages which allegedly occurred to their residence at 117 North Salcedo Street in New Orleans, Louisiana, and for worry, inconvenience and mental anguish as a result of the construction activity which took place on abutting property owned by the defendant-appellant. Other parties named as defendants in the petition of Mr. *434 and Mrs. Craig have been dismissed during the course of this litigation and their dismissal is not at issue here.
Montelepre Realty Company, Inc. denied the claims of plaintiffs and filed a third-party demand against Gervais F. Favrot Company, Inc. and S. K. Whitty and Company, Inc., who performed construction activity on the property of Montelepre Realty Co. and prayed for indemnity should the third-party plaintiff be held liable in damages to Mr. and Mrs. Craig.
The suit grew out of the construction of an addition to the Montelepre Hospital in the 3100 block of Canal Street in the City of New Orleans. The Montelepre Realty Co. Inc. was the sole owner of the land upon which the addition was erected. A portion of the side line of the Craig lot adjoins the rear line of the Montelepre property. The construction commenced during March of 1963 and was completed in September of 1964.
This suit was filed on April 17, 1964. The case was tried before a jury which returned a verdict of $1,700.00 in favor of Mr. and Mrs. John T. Craig for damages to their residence and of $1,000.00 in favor of Mrs. John T. Craig for mental anguish, worry and inconvenience against Montelepre Realty Co., defendant in the main demand. The third-party defendants, S. K. Whitty and Co. Inc. and Gervais F. Favrot Co. Inc. were dismissed from the demands of the third party plaintiff, Montelepre Realty Company, Inc.
The defendant, Montelepre Realty Co. Inc., has appealed and urges several contentions for our consideration, but the main thrust of its appeal is the defense of prescription. The prescription applicable to actions against a landowner for damages occasioned by his use of his estate (Louisiana Civil Code Article 667) is that of one year, and is found in Article 3536 of the Louisiana Civil Code. Gulf Insurance Co. v. Employers Liability Assurance Corporation, La.App., 170 So.2d 125 (1964). Article 3536 is further qualified by Article 3537 which states that prescription begins to run from the date damage is sustained or from the date of knowledge, in the case of injury to property.
The appellant contends that by Mr. Craig’s own admissions in a pre-trial discovery deposition, all damages complained of were attributed to pile-driving activity and are thus prescribed since suit was filed over one year from the date all pile-driving ceased. The pile-driving activity ceased on April 10, 1963, and suit was not filed until April 17, 1964. It is asserted that the trial court erred in not granting the motion for summary judgment dismissing all of plaintiff’s claims in connection with the pile-driving operation, and that the jury also erred in not finding the claims prescribed. The appellant also complains specifically of the charge given by the Court below to the jury:
“You are charged that when a party lulls another into the belief that he will suffer no loss by his inaction, and thus induces him to refrain from claiming a debt, prescription will not begin to run until the party is undeceived.”
It was established that the third-party defendant, S. K. Whitty and Co. Inc. handled the pile-driving chores in the construction of the four-story reinforced concrete hospital annex. Gervais F. Favrot Co. Inc. was the general contractor for its construction, and they employed S. K. Whitty & Co. Inc. Mr. C. G. Fleming, a representative of S. K. Whitty & Co. Inc., testified that their pile-driving equipment was first moved onto the job site on March 14, 1963. Six test piles and two reaction piles were driven on March 15, 1963, and the equipment was moved off the site on March 19, 1963. On April 5, 1963 pile-driving equipment was relocated on the job-site and 154 piles, varying in length from fifty to fifty-six feet, were driven on the 8th, 9th and 10th of April. The pilings were drivén by a steam hammer producing 15,000 ft.-lbs. per blow. April 10, 1963 *435 marked the final termination of all pile-driving activity. This is the only testimony in the record concerning the date of termination of the pile-driving operation and is not contested by the original plaintiffs in this appeal, although by a supplemental and amended petition they had alleged “that the part of the construction relating to the driving of the piling took place during the last week of April 1963.”
The facts also show that Mr. Paul Montelepre, President of Montelepre Realty Co. Inc. who was frequently at the job site, and Mrs. Craig had several conversations concerning the damage which is alleged by the Craigs to have occurred to their home.
Before the pile-driving began, Mr. Mon-telepre had pictures taken of defects then present in the Craig home, and after the construction began, Mr. Montelepre assured Mrs. Craig that adjustments of damage would be made toward the end of the construction, during the course of their conversations. He also, on occasion, sent workmen over to repair some of the damages when they occurred.
If the jury found that the plaintiff was lulled into inaction by the assurances of Mr. Montelepre in response to the corresponding charge, and was thus entitled to damages which would otherwise be prescribed, then such a finding would be manifestly erroneous since the evidence adduced could in no wise indicate acts lulling the plaintiff into inaction so as to prevent the running of prescription. The acts of the defendant alleged to mislead the plaintiff must be such as to prevent him from knowing of his cause of action or must import of deliberate concealment, or fraud, or failure to perform a legal duty. This is illustrated by the cases cited by both the plaintiffs and the defendant. Odoberto v. Virgin, Peltier’s Orl.App. No. 7986. Kennard v. Yazoo and M.V.R. Co. La.App., 190 So. 188 (La.App.1939).
Departing from the previous testimony given at the deposition to the effect that pile-driving vibration was the source of their damage, at the trial of this case Mr. and Mrs. Craig both maintained that the damage occasioned to their home was not the result of pile-driving alone, but that it resulted from the entire construction activity and much damage was manifested after the cessation of pile-driving. The attorneys for the defendants attempted to-impeach the Craigs’ testimony in this regard by reference to the prior deposition in which Mr. Craig did not attribute any of their damage to construction activities other than pile-driving. We quote the following from the record of the cross-examination of Mr. Craig:
Q. “You remember when your deposition was taken last August 15th?
A. Yes, Sir.”
MR. WELLER:
Q. “And did all of the damage occur when the pile-driving operations were going on, and this was your answer, ‘Pile driving, and the damage was caused by the piledriving, and all the spots on the side of the house, the cement came from the pouring of the concrete for the upper floors and is all over the house.’ Now, do-you remember making that answer?'
A. Well, I might have — the man may-have — I might have not brought in this other stuff at the time, but I didn’t — might have been figuring on-some other question of damage that. I was talking about.
Q. Were you also figuring on something-else when on page 25 you were asked, line 3, ‘Q. Let me ask you this, are-you saying all of the damages except: for the cement being splashed on that, was done to your house was done when these vibrations occurred from the pile-driving?’ Answer, ‘Yes, I think that was what caused it, all *436 through that, vibration and shaking of earth.’ Question ‘And it all occurred while the piledriving was going on?’ ‘That’s right.’ Do you remember making that—
A. Well, I remember saying that, but I didn’t bring in this other stuff here because I didn’t remember it or didn’t—
Q. Well, you also remember, and I refer now to page 26, and you were asked, ‘And again all of the damage that was done to your house was done during the piledriving except for the creosote and cement,’ and your answer was, ‘That’s right.’
A. Well, I might have said it if you got it there, but—
Q. Well, Mr. Craig, if I were to tell you that no place in this deposition that was taken last August do you say word one about anything but pile-driving, would that be correct, would it be correct that you never did refer to any other item of damage whatsoever, and that apparently to anybody else, at least, río other source of damage occurred?
A. Well, if you got it there, maybe so, but that’s what the vibrations was all through the construction of the hospital, but I didn’t show it there like you say.
Q. That’s true, Mr. Craig, that’s true that you never' said one word when you were asked several times about the source of this damage last August ?
A. Well, the ones I mentioned here today is truthful, that we had all these things going at one time, but I didn’t mention it in there.-
Q. Well, Mr. Craig, that deposition was taken under oath last August, wasn’t it?
A. Yes, I know it was.
Q. And you said everything then you could remember, didn’t you?
A. Well, I was kind of a little excited at the time, and I may have not brought this stuff in, but — ”
MR. WELLER:
“That’s all I have, thank you.”
MR. HANEMANN:
Q. “Mr. Craig, going back to the same deposition, sir, I would like to read part of your testimony to you and ask you if this was not in fact your testimony given under oath and signed by you: ‘Did the damage become apparent to you right away ?’ Answer, ‘Yes, we knew the house was being shaken up.’

Q. ‘You knew the plaster was being cracked?’ Answer, ‘No, I noticed that a day or so after. They were still shaking the house up, and we noticed the cracks.’ Question, ‘While the piledriver was still working?’ Answer, ‘Yes, while it was still there.’ Now was that your testimony, Mr. Craig?
A. That’s right, that was — that’s the way it was, the piledriver shook the house, but I mean that we had all this other vibrations, too.
Q. But you didn’t mention those in your deposition, when you came to tell us about these damages, did you, sir?
A. No, I didn’t.”
MR. HANEMANN:
“You didn’t; thank you.”
Mrs. Craig stated the following in reference to her deposition:
“A. I’m taking the whole thing, the whole construction, pile driving, *437 everything, the trucks, the machine, the saw.
Q. Again, today you’re swearing that some damage was done as a result of trucks and the saw?
A. Yes, some, plenty.
Q. May I ask you why you didn’t tell us about this on August 18th, 1964?
A. Well, like I’m telling you, I’m no expert. At the moment it didn’t come to my mind to bring all that up. Why didn’t you ask it?”
However, the evidence also showed that the pile-driving was not the end of the heavy construction. After the pile-driving a four-story, reinforced concrete building was raised, necessitating the use of a tower hoist in order for the cement to be transported to the several floors; heavy cement trucks were used throughout the seven or eight months required for the pouring of cement into the forms constructed on the premises; and a steam-roller was utilized in laying an asphalt driveway to surround the building. It is also noteworthy that the plea of prescription could have no effect upon any element of damages found to have occurred one week after April 10, 1963, the date of the cessation of all pile-driving. Further, the defendant’s witness, Henry C. McCarthy, qualified as an expert contractor, testified that although most of the damage was caused by natural settlement, in his opinion some of it appeared to be of recent origin and this probably resulted from vibration; he would not venture an opinion as to the source of this vibration.
This court is convinced that, while the pile-driving was the source of a substantial portion of the damage to the Craig residence, recovery for which is barred by prescription as above stated, the ensuing activities were also responsible for some damage for which defendant may be held.
We are therefore of the opinion that if the extent of the damage sustained within one year prior to the institution of suit is provable, then the plaintiffs are entitled to recover to that extent. However, we find it impossible to determine these damages as the record now stands, and it does not reveal how the jury’s award of $1700.-00 was determined. We do not agree with counsel for plaintiffs that the damages are attributable to the entire construction activity to the extent that prescription is not applicable to the damage caused by pile-driving and are directed to no jurisprudence to this effect.
With reference to .the third-party defendants, Montelepre Realty Company, Inc. here seeks indemnity for only two items of damage to the Craig residence — creosote splat-terings on the residence caused by S. K. Whitty & Co. Inc., and cement splatter-ings, attributed to Gervais F. Favrot Company, Inc. The creosote splatterings were occasioned during the pile-driving and is therefore prescribed insofar as the defendant, Montelepre Realty Company Inc. is concerned. Therefore there is no need for recovery over against S. K. Whitty & Co. Inc. The damage from cement splattering is recoverable, but we do not have sufficient evidence of the cost of repair thereof to grant an award in indemnity.
We feel that the fairest thing to do under these circumstances is to remand the case in order that the matter be tried to the end of determining the extent and worth of that portion of the damage to the Craig residence which has not prescribed, so that the Court below can grant an award based on the evidence adduced.
The defendant also argues that the damages awarded to Mrs. Craig for mental anguish, inconvenience, and worry was excessive and should be reduced to $100.00. *438 Unlike the property damage, we think the record is sufficient to support an award for this amount of $1,000.00. These items of damage continued throughout the construction of the hospital up to the day construction ceased, and beyond. The Craigs were an elderly couple who had resided in this particular residence for over forty years. The construction and its damages resulted in considerable annoyances to Mrs. Craig, and this portion of the judgment will be affirmed.
Another complaint of error by the ■defendant was directed to the refusal of ■the trial judge to allow evidence of the condition of other houses in the neighborhood. 'The trial judge based his refusal on the ■understandable reason that the admission •of such evidence would tend to lead to a trial over the underlying cause of the condition of each house and he preferred to limit the trial of that issue to the Craig residence. This we think was within his •discretionary province to control the course •of the trial.
The claim regarding creosote damage is no longer an issue in view of our conclusion that pile-driving damage is prescribed. However, the cement-splattering damage is ■not prescribed, and Mr. Marvin Banton, who represented Gervais F. Favrot Co. Inc. 'himself testified on the witness stand that •if cement were splashed on the adjoining ■property then his people “had done something wrong.” But, as indicated, the pecuniary value of this item of damage must be ■established on the remand before an award •for reimbursement can be made.
The conclusion we have reached in this ■opinion in effect disposes of all contentions raised by the parties on this appeal.
Therefore that portion of the judgment •dated April 20, 1965 in favor of the plaintiffs and against Montelepre Realty Co. Inc. in the sum of $1700.00, with legal interest, is reversed and set aside; and that portion dismissing the claim of Montelepre Realty Co. Inc. against Gervais F. Favrot Co. Inc. is reversed and set aside; and the case is remanded for such further proceedings as the nature of the case and this opinion may require. In all other respects the judgment of the lower Court is affirmed.
Affirmed in part; set aside and reversed in part; and remanded.