YARRUT, Judge.
Plaintiff appeals from a judgment, in favor of defendant, dismissing its claim for damages to its air-conditioning unit and ice-making machine, occasioned by vibrations from pile-driving operations on defendant’s adjoining property.
Plaintiff, as lessee of defendant, operates a suburban cocktail lounge and restaurant. Under the same roof defendant owns and operates a super market, which defendant contracted to expand. In preparing the foundation, 35 piles were driven to a depth of 25 feet, approximately 35 feet from plaintiff’s lounge. The piles were 25 feet in length, 6 inches in diameter at the bottom and 8 inches at the top. All were driven in less than one day.
There is serious contention whether defendant’s liability, if any, is controlled by LSA-Civil Code, Art. 667 or Art. 2315.
It is conceded that, if Art. 667 controls, defendant could be liable without proof of fault; whereas, if Art. 2315 controls, de *150 fendant could not be liable without proof of fault; and defendant contends that, as plaintiff is only the lessee of the adjoining property, and not the owner, its liability vel non is governed by Art. 2315.
Before defendant can be held liable, with or without fault, plaintiff must first prove its damage was caused by the work done on defendant’s adjoining property. Accordingly, we can pretermit this issue, because the evidence clearly establishes that plaintiff’s damage was not due to the pile-driving, but to an antecedent cause.
The air-conditioning system, installed in 1946, was thereafter serviced by Mr. John C. Britt. Mr. Britt, a self-trained mechanic, testified he had been servicing similar equipment for 19 years; admitted he was not a licensed electrician, and held only a 1943 City refrigeration license. Plaintiff used Mr. Britt to check his equipment at the beginning of the season. Britt stated that, at the beginning of the 1953 season, the air-conditioning system was in good operating order.
Mr. Curtis W. Miller (for the plaintiff) licensed to practice in Jefferson Parish, repaired the equipment after the incident, renewing the motor, motor controller and a pressure switch. He stated that both motor and motor control were badly burnt, and their contacts black from repeated “arcing,” occasioned by too frequent opening and closing of the contact points, which caused them to overheat and burn, and the final burning of the motor. The excess activity of the contacts he said could be due to severe vibration. Miller admitted that most air-conditioning units are mounted on shock-absorbers, but could not say whether this particular unit was so mounted. He admitted that to have caused the damage here, any vibration would have to be severe, leading to the conclusion that the shock-absorbers would protect the equipment from minor vibrations and prevent the equipment from damaging other property by its own motor vibrations.
Arthur J. Bech, an electrical contractor in the City and Jefferson Parish for 40 years, testified for the defendant. He stated that approximately two days after the piles were driven defendant’s contractor hired him to move some wires. The contractor took him to the compressor next door and he found the motor smoking. He told plaintiff’s bartender to pull the switch and call his refrigerator man, which he did. Three days later plaintiff's bartender came out and said to him “You got my machine making a funny noise,” and asked Bech to look at it again. Bech did and found that the contacts on the starter itself were so badly worn and “pitted” that one phase only was in, the other phases not; that some “crank” mechanic took a piece of wire and “jumped” the heating element, the very life of the motor; that such “jumping” is the same as taking a fuse out of a circuit and substituting a penny for contact. He advised the bartender to get his refrigeration man, as he would not touch it.
Bech explained that the opening and closing of the contacts could not be caused by vibration, since you could hit the wall with a sledge hammer and not budge the control.
Plaintiff makes much of the fact that Bech improperly located the compressor on a blueprint shown him at the trial six years after the incident. However, Bech described the condition of the equipment pointed out to him by plaintiff’s bartender, and insisted it was in plaintiff’s place of business, regardless of the blueprint.
Defendant’s general contractor stated he went into the cocktail lounge about four times during the day the piling were driven, accompanied by Mr. Maxwell, the architect, to determine if there were any vibrations. They observed a water glass sitting on the bar was immobile.
The piling sub-contractor testified that the soil is known as “coffee grounds,” a soft material which permitted the piles to- *151 be driven very easily by a 1600-lb. gravity hammer that fell from 5 to 8 feet. He likened the vibration to that made by an automobile passing on the street, which would not be felt unless one was actually looking for it.
Mr. Scalco, one of the owners of the lounge, testified that everything in the place was dancing, referring to glasses on the shelf. He also felt the vibration under his feet when he walked in the building. He stated he could not tell if other damage had been done to the premises.
It is strange that this witness, one of the owners, feeling the vibration and finding everything in the place “dancing,” did not complain to defendant until four days later. The piles were all driven on the 19th of December (Friday) in less than a day, and no complaint was made until December 24th (Monday), after an intervening weekend, usually a busy time for cocktail lounges and restaurants.
Mr. Murvan M. Maxwell, a licensed and practicing architect since 1933, and the project architect, described the soil at the location to be very granular and had a high humous content. He further stated that it is a high organic type soil, commonly referred to as “coffee grounds” and its ability to support weight of any material consequence is quite small. He went into the plaintiff’s lounge and found no flutter whatsoever in the glasses of water on the bar. He made several inspections in the area and saw no evidence of vibration. He was there about half the time the pilings were being driven. He was the architect for the main building and therefore familiar with the soil conditions.
Counsel for the appellant place great ■ stress on the case of Bruno v. Employers Liability Assurance Corp., La.App., 67 So.2d 920, 922. That case is distinguishable from the present one since 810 piles were driven as compared with 35 piles here. The piles there were 60 feet long, while those involved in the instant case were only 25 feet, and most, important, the hammer, involved in the Bruno case, the cause of any vibrations, was five times the weight of this one. This court stressed these distinctions in the following language:
“We find it extremely hard to believe that the pile driver having a hammer of such weight driving piles of such length created no vibration, * * * ”
Moreover, in the Bruno case, the plaintiff’s testimony was corroborated by that of her neighbors, whose homes experienced similar shocks. Mr. Scalco’s testimony is not only uncorroborated but is contradicted by that of Messrs. Makofsky, Whitty and Maxwell.
In view of the above, we must agree with the trial court that plaintiff did not prove that defendant was responsible for the damage to its equipment. Modica v. Employers Casualty Company, et al., 231 La. 1065, 93 So.2d 659.
For the reasons assigned, the judgment is affirmed, plaintiff to pay all costs in both courts.
Affirmed.