196 So.2d 293 (1967)
Richard J. BURKE
v.
BESTHOFF REALTY CO., Inc., et al.
No. 2479.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1967.
*294 Favret, Favret & Favret, Clarence F. Favret, Jr., New Orleans, for plaintiff-appellee.
Adams & Reese, Joel L. Borrello, New Orleans, for defendants-appellants.
Before REGAN, SAMUEL and BARNETTE, JJ.
BARNETTE, Judge.
Defendants Besthoff Realty Company, Inc., as owner; Katz and Besthoff, Inc., as lessee of real property;[1] and their insurer, *295 Aetna Casualty and Surety Company, have suspensively appealed from a judgment against them in solido in the amount of $2,964 for damages to the property of plaintiff Richard J. Burke, based upon the application of LSA-C.C. art. 667. The trial court held that the defendants had used their property in such a manner as to result in damage to the residence on the adjacent property of plaintiff Burke. Also made defendants, both by plaintiff and by third party petition of the other defendants, were New Orleans Disposal Service, a division of New Orleans Transfer Company, Inc. (hereinafter referred to as New Orleans Disposal), and its insurer, Hardware Mutual Casualty Company. These defendants were dismissed below for want of proof of negligence. No appeal was taken from this judgment of dismissal, and the same is now final in that respect.
The residence of plaintiff Burke, adjacent to defendants' property, is a four-apartment house located at 1620-26 Napoleon Avenue in New Orleans, Louisiana. It is a two-story dwelling with the exterior walls consisting of stucco on metal lath over weatherboard siding and the interior walls consisting of plaster on wood lath. Burke purchased the property in 1958 and, at that time, had it completely renovated, both interiorly and exteriorly.
On December 2, 1963, Katz and Besthoff, Inc., entered into an oral agreement with the New Orleans Disposal Service for the pickup and removal of the trash accumulated in the course of business of the drugstore conducted by Katz and Besthoff, Inc., at the northwest corner of St. Charles and Napoleon Avenues. In connection with this agreement, a 6-cubic-yard, steel trash container was placed at the rear of the drugstore about 10 feet from the fence separating plaintiff's and defendants' property. This container was picked up between 7 and 7:30 a. m., six days a week, by a 25-cubic-yard, three-axel, hydraulically operated truck owned by the New Orleans Disposal Service. The driver of the truck would engage the container by the use of forks, elevate it hydraulically, and dump the trash into a tank on the truck. The trash was usually forced out of the container by jerking the container and knocking its doors against the trash tank on the truck.
After dumping the trash into the truck, the driver would then compress the trash by the use of a hydraulic ram. The use of the hydraulic equipment required a great amount of engine racing to build up pressure in the tanks. All of these actions took place at a point about 23 feet from the nearest point of plaintiff's house.
The time which was required to complete the operation ranged from five to twenty minutes. During this period there was a great amount of noise and vibration created by the dumping procedure and the engagement of the hydraulic devices. Vibrations were felt throughout the plaintiff's house when the trash operation was taking place, but they were particularly noticeable by the parties living on the side facing the drugstore.
On March 15, 1964, plaintiff Burke noticed surface cracks beginning to appear on the exterior stucco and interior plaster on the drugstore side of his home. These cracks continued to develop with the passage of time and the constant trash removal operations.
Letters of complaint about the disturbing noise in early morning hours brought response and a later pick-up schedule. After increasing damage became evident, Burke wrote Katz and Besthoff on December 11, 1964, and January 12, 1965, informing them of this fact and requesting that necessary repairs be made. He received no reply to these letters and filed suit on March 15, 1965.
Strict liability is imposed upon landowners under LSA-C.C. art. 667 to the effect that one must not use his property in such a manner that it causes damage to a neighbor's property. The action is not one in tort and there need be no proof of negligence on the defendant's part for his *296 liability to arise. All that need be shown is that, as disclosed by a preponderance of the evidence, there exists a causal connection between the acts of one property owner and the damages suffered by the other. Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955); Devoke v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (1947); Klein v. Department of Highways, 175 So.2d 454 (La.App. 4th Cir. 1965); Watson v. Mid-Continent Aerial Sprayers, 170 So.2d 149 (La.App. 2d Cir. 1964); Gulf Ins. Co. v. Employers Liab. Assur. Corp., 170 So.2d 125 (La.App. 4th Cir. 1964); Selle v. Kleamenakis, 142 So. 2d 50 (La.App. 4th Cir. 1962); Elysian Cocktail Lounge and Restaurant v. Sciambra & Masino, Inc., 124 So.2d 149 (La. App. 4th Cir. 1960); Bankston v. Farmers Cooperative Gin of Winnsboro, 116 So.2d 91 (La.App. 2d Cir. 1959).
In his reasons for judgment, dictated into the transcript at the conclusion of the trial, the trial judge held that the plaintiff had discharged the burden of proof "beyond peradventure of doubt." The facts revealed by the testimony of the witnesses, in our opinion, support the conclusion that there was a causal connection between the vibrations set in motion by the operation of the trucks on defendants' property and the damage complained of.
The plaintiff Burke and tenants occupying the apartments adjacent to defendants' property testified that they could feel and hear the vibrations inside the house, even in the shower bath. They testified further that a mirror mounted on a door would shake; that an upper window sash fell when a supporting peg became dislodged during one of the truck operations; and that cracks began to appear both in the plaster and the outside stucco, which were not apparent before the truck operations were begun. These cracks became more prominent as the vibrations continued. This damage is evident in photographs filed in evidence.
Defendants attempted to show that movement of transit buses and other traffic on Napoleon Avenue set in motion vibrations which, when recorded on plaintiff's property by means of a "falling pin" instrument, registered an intensity as great as that in the vibrations caused by the operation of the trucks. From this premise, it was argued that the plaintiff had not proven the necessary causal connection upon which to base liability. The trial judge discounted the probative value of these tests which were not made with a calibrated seismographic instrument. We find no reason to disagree with this finding in view of the more convincing testimony of plaintiff's witnesses as to the effects of the vibrations obvious to the physical senses. The lower court's findings as to questions of fact should not be disturbed on appeal unless manifestly in error, and no such manifest error is present in the case before us.
After this suit was filed and while pending trial, plaintiff's property in question was extensively damaged in the hurricane "Betsy" which struck the City of New Orleans in September 1965.
During the course of the trial, it was established through cross-examination of the plaintiff, after some evasive answers on the subject, that he was paid a sum in excess of $8,700 by his windstorm insurer, United Fidelity and Guaranty Insurance Company, for the damages occasioned by "Betsy." Paul Jensen, who had previously made an appraisal and a bid for repairs of the damage caused by the garbage disposal trucks, reported on October 6, 1965, the damage caused by the hurricane. His estimate of repairs included an item, designated as item 10, for repair and replacement of all damaged plastering and stucco. His response to a request for a breakdown on this item and item 9, relative to painting, disclosed a striking similarity to the estimate for repair of damage caused by the trucks, annexed to plaintiff's petition. On the basis of this estimate, payment of the *297 hurricane damage was made to the plaintiff.
Defendants contend that the damage alleged to have been caused by the garbage trucks was included in whole or in part in the proof of loss resulting from the hurricane and that plaintiff has been paid for such loss by his insurer and that further payment for the same damage would be a dual recovery. Defendants further contend that the identity of plaintiff's insurer, who paid the hurricane damage, was not ascertainednotwithstanding diligent effort until Friday, March 25, preceding the trial on Monday, March 28. Plaintiff's objection to these contentions was sustained by the court with the comment that defendants had denied that the trucks had caused the damage in question, and they would not then be allowed to engraft upon the case the issues raised by these contentions. Defendants' request for an instanta amendment was overruled, and the case was decided on the issues pleaded.
It does appear probable that there was included in the hurricane damage estimate, items of damage and repair covered by Mr. Jensen's original estimate made December 7, 1964, some nine months before the hurricane. But whatever equities which might result from a dual recovery, in whole or in part on this account, are matters which address themselves to plaintiff's insurer. If a payment was made by the insurer for damages not caused by the hurricane and not covered by the terms of its policy, that is a matter which it alone can pursue. The defendants being at fault have no right to raise the issue of unjust enrichment, which, if sustained, would result in their own unjust enrichment at the expense of plaintiff's insurer. LSA-C.C. art. 1965. Therefore, we hold that the trial judge correctly refused to permit these issues to be injected into the case.
There was no other issue touching upon the quantum of damage, and the amount awarded below conforms to the pleadings and evidence.
The defendants have made no point of the fact, which we noted at the outset of this opinion, that the drugstore property (i. e., the real estate) is owned by the defendant Besthoff Realty Company, Inc., and occupied under lease by Katz and Besthoff, Inc., a separate legal entity (though probably under the same ownership and control). No issue has been made of the applicability of LSA-C.C. art. 667 by the judgment of the trial court against the lessee in solido with the "proprietor" of the property. Apparently this issue is of no practical significance in the instant case because of the common ownership of the two corporations and their coverage by the same insurer. This could conceivably be an issue where the proprietor and the lessee are entirely separate and independent parties. We have taken judicial notice of this fact, since LSA-C.C. art. 667 imposes the liability for damage to the "neighbor" upon the "proprietor" of the property in the following language:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
It is the proprietor (owner) of the real estate to whom this restriction applies. The duty is imposed upon him, rather than his lessee, for it is the owner who is "do [ing] with his estate," as it may please him to do. To the extent that this article restricts his freedom of use, he is responsible for the use which his lessee makes of the property.
We have reviewed our jurisprudence on this point and find that in those cases where the lessee has been found liable, there was an element of fault on the part of the lessee, as in Muller v. Stone, 27 La. *298 Ann. 123 (1875), or a long-term lease vesting the lessee with the rights of proprietorship, as in Devoke v. Yazoo & M.V.R. Co., supra; and McGee v. Yazoo & M.V.R. Co., 206 La. 121, 19 So.2d 21 (1944). In these latter cases the issue does not appear to have been raised.[2]
In Fontenot v. Magnolia Petroleum Co., supra, Magnolia and a seismographic engineering firm were held liable in solido on the rational of liability without fault under LSA-C.C. art. 667. There was no proof of negligence or fault in the manner in which the seismographic tests, which caused the damage, were made. On the contrary, it appears from the opinion that they were conducted in full accord with accepted modern methods. The opinion does not state whether Magnolia was the owner of the property or mineral lease, and the issue was not raised. Furthermore, there was no contention of nonliability of the seismographic firm. This firm was without fault or negligence and was neither owner nor lessee. We fail to see how it could be brought under the application of article 667.[3] Perhaps if the issue had been raised, a different conclusion might have been reached on this point.
It is our opinion, therefore, that the lessee, Katz and Besthoff, Inc., was improperly cast in judgment, and this court should render such judgment as is just, legal and proper upon the record before us on appeal. LSA-C.C.P. art. 2164.
For these reasons, the judgment appealed from is amended so as to dismiss plaintiff's demands against Katz and Besthoff, Inc. In all other respects it is affirmed with costs assessed against appellants Besthoff Realty Company, Inc., and Aetna Casualty and Surety Company.
Amended and affirmed.
NOTES
[1] The ownership of the property by Besthoff Realty Company, Inc., and its occupancy under lease by Katz and Besthoff, Inc., for a retail drugstore business, is admitted in the pleadings.
[2] For a discussion of the meaning of proprietorship as it relates to long-term and mineral leases, see 40 Tul.L.Rev. 704 (1955-56).
[3] See 20 La.L.Rev. 378 (note n. 27 at 385) (1959-60); Dainow, Servitudes, 16 La.L.Rev. 227 (1955-56).