GLADNEY, Justice-ad-Hoc:
On application of plaintiffs, we granted limited certiorari in this matter (limited to a consideration of Alternate Errors Nos. 5 and 6[1]), in order that we might review the judgment of the Court of Appeal, Fourth Circuit, which affirmed in part and reversed and set aside in part the judgment of the trial court and remanded the case to that court for further proceedings as directed. Art. VII, Sec. 11, La.Const. of 1921; 202 So.2d 432; 251 La. 401, 204 So. 2d 577.
Mr. and Mrs. John T. Craig, ages 74 and 70 respectively at the time of trial, owned and occupied a residence located at 117 No. Salcedo Street, New Orleans, Louisiana, where they had resided for between 42 and 44 years. The side line of their property adjoins property owned by Montelepre Realty Co., Inc. (Hereinafter referred to as Montelepre) fronting on the 3100 block of Canal Street, New Orleans, Louisiana.
On March 7, 1963, Montelepre began the construction of a four story addition to the Montelepre Clinic on its property, which construction was completed on September 15, 1964. The record discloses that while construction was being planned, the relationship between the Craigs and Mr. Paul Montelepre, President of Montelepre, was most cordial; the Craigs were cooperative with Mr. Montelepre in the securing of *505 a zoning permit. Initially, piles were driven by S. K. Whitty & Co., Inc. Six test piles and two reaction piles were driven on March 15, 1963, and the equipment was moved off of the site on March 19, 1963. The equipment was relocated on the job-site on April 5, 1963, and 154 piles varying in length from fifty to fifty-six feet were driven by a steam hammer producing 15,000 ft. lbs. per blow. The last pile was driven on April 10, 1963, and the equipment was moved the same day. Prior to the commencement of pile-driving, Mr. Montelepre had four pictures taken of the interior of the Craig home, and apparent cracks and defects were photographed.
With the commencement of the pile-driving and throughout construction, the Craigs allegedly suffered property damages. Some repairs were made upon Mr. Montelepre’s orders, but negotiations for repairs were unsatisfactory and suit was filed on April 17, 1964. Plaintiffs prayed for damages in the amount of $5,347.45, alleging in part:
“6.
“That during the construction thereof, the defendants caused, through their servants, agents or through contractors to have hammered into the ground within 20 to 30 feet of the foundation of plaintiffs’ improvements, piling to a depth of between 20 and 40 feet.
“7.
“That as a result of the pile driving and as a result of construction, through vibration and through the splashing of wet cement and creosote the improvements belonging to the plaintiffs suffered the following damages:
“A. Front concrete step cracked and damaged;
“B. Front room wallpaper distorted and ruptured;
“C. Hall wall cracked and split;
“D. Bathroom ceiling split and glass ceiling light broken;
“E. Bedroom wall cracked through wall paper;
“F. Kitchenette wall plaster cracked and door frame to closet ruptured ;
“G. Rear apartment door from side porch into bedroom sprung and ruptured;
“H. Bedroom ceiling wall cracked in several places;
“I. Stairs leading upstairs at first floor landing ruptured so that it admits daylight and air into the house and plaster wall cracked;
“J. Vinyl tile floor in kitchen recently installed just before defendants construction, as a result of tilting of the house because of damage to foundation as a result of pile driving has pulled away from the subflooring in places;
*507 “K. Bathroom has cracked plaster-and tongue and groove wainscoating is sprung and ruptured;
“L. Wash shed at rear of house in rear yard has pulled away from house and hot water [heater] lifted off of floor;
“M. Side of house adjacent to construction painted white was spattered with cement and creosote by the workmen of defendants;
“N. That wooden fence separating the property of plaintiffs and defendants constructed of one inch by two inch frames with hardware cloth on four inch by four inch posts has been damaged and knocked out of line;
“O. All gas installation and electrical wiring has been damaged as a result of the pile driving and work;
“ * * *
“9.
“That shortly after the pile driving of the defendants had been completed the floor furnaces which were used to heat the premises of the plaintiffs had to be repaired by replacing clay burner parts, thermo-couple leads with repairs to burner and piling on the two floor furnaces.
“10.
“That both of your petitioners suffered worry, inconvenience, mental anguish and embarrassment by reason of the fact that when they spoke to representatives of the Montelepre Hospital * * * they were told not to worry that their damage would be taken care of; * * * events have transpired to show that this was nothing more than a delay in tactics engaged in by the agents or representatives of the defendants herein designed to harass plaintiffs and give them the trouble of having to go and employ Attorneys at Law to represent them to prosecute this action for damages ; * * * ”
Plaintiffs amended their petition, alleging that the construction commenced in March, 1963, continuing for a period of several months, and that the construction relating to the driving of the piling took place during the last week of April, 1963. They also alleged that they had suffered further damages since the filing of suit, which, justified an increase in their demand to $7,847.45.
Montelepre denied the allegations of plaintiffs and filed a Third Party Petition against Gervais F. Favrot Co., Inc., Building Contractor, and S. K. Whitty & Co., Inc., Pile-Driving Contractor, praying for indemnity if Montelepre should be held liable for any judgment on the main demand. Montelepre also filed a motion for summary judgment, in which it averred that plaintiffs’ petition, was filed on April 17, 1964, more than one year. after the *509 date of the last pile-driving operations by S. K. Whitty & Co., Inc., April 10, 1963, and that therefore plaintiffs’ claims relative to pile-driving damage had prescribed. S. K. Whitty & Co., Inc. also filed a motion for summary judgment, claiming the prescription of one year with respect to pile-driving operations.
The trial court dismissed the motions for summary judgment, and the matter was tried on the merits to a jury. The verdict of the jury, April 20, 1965, recites:
“We, the Jury, find a verdict in favor of the plaintiffs in the main demand, Mr. and Mrs. John T. Craig, and against the defendant in the main demand, Montelepre Realty Co., Inc., in the full and true sum of $1700.00, together with legal interest thereon from date of judicial demand until paid and for all costs.
“We, the Jury, find a verdict in favor of the defendant in the Third Party Petition, S. K. Whitty & Co., Inc., and against the plaintiff in the Third Party Petition, Montelepre Realty Co., Inc., dismissing the said Third Party Petition as to S. K. Whitty & Co., Inc.
“We, the Jury, find a verdict in favor of the defendant in the Third Party Petition, Gervais F. Favrot Co., Inc., and against the plaintiff in the Third Party Petition, Montelepre Realty Co., Inc., dismissing the said Third Party Petition as to Gervais F. Favrot Co., Inc.
“We, the Jury, find a verdict in favor of the plaintiff, Mrs. John T. Craig, individually in the main demand, and against the defendant in the main demand, Montelepre Realty Co., Inc., in the full and true sum of $1,000.00, together with legal interest from date of judicial demand until paid and for all costs.”
The trial court rendered judgment in exact accordance with the above verdict.
Montelepre appealed, the main thrust of its appeal being the defense of prescription. The Court of Appeal found that the plea of prescription was good with respect to damages caused by pile-driving. It held that the prescription applicable to actions against a landowner for damages occasioned by his use of his estate, LSA-C.C. Article 667, is that of one year found in Article 3536 of the Civil Code. The Court found, however, that the plea of prescription could have no effect upon any element of damages which occurred one week after April 10, 1963. It stated that the activities which ensued after the pile-driving were responsible for some damage for which Montelepre might be held. It stated:— “We are therefore of the opinion that if the extent of the damage sustained within one year prior to the institution of suit is provable, then the plaintiffs are entitled to recover to that extent. However, we find it impossible to determine these damages as the record now stands, and it does *511 not reveal how the jury’s award of $1700.00 was determined. We do not agree with counsel for plaintiffs that the damages are attributable to the entire construction activity to the extent that prescription is not applicable to the damage caused by pile-driving and are directed to no jurisprudence to this effect.” The Court went on to say that the fairest thing to do was to remand the case in order that the matter be tried to the end of determining the extent and worth of that portion of the damage to the Craig residence which had not prescribed, so that the trial court could grant an award based on the evidence adduced.
The Court of Appeal reversed that portion of the trial court’s judgment in favor of the plaintiffs and against Montelepre in the sum of $1700.00; as stated supra, it remanded the matter for further proceedings. It also reversed that portion of the judgment dismissing the claim of Montelepre against Gervais F. Favrot Co., Inc. In all other respects, it affirmed the judgment of the trial court.
Recent jurisprudence indicates that the courts have vacillated in their determinations as to whether a cause of action under LSA-C.C. Article 667[2] is ex contractu or ex delicto.[3] Such designation has a direct ef *513 feet on the application of prescription to the facts of the case. Our findings infra make it unnecessary for us to pass on the question in this opinion.
The courts have been uniform in their finding that Article 667 imposes strict liability. A plaintiff has to show by a preponderance of the evidence that there exists a causal connection between the acts of a defendant property owner and the damages suffered by him. “While negligence is an example of ‘fault’ within the meaning of Article 2315, it is well settled that the obligation imposed upon proprietors by Article 667 is absolute and that proof of negligence is not required in order to recover for a violation or breach thereof.” Gulf Insurance Co. v. Employers Liability Assur. Corp., 170 So.2d 125, 127. Cf. 40 Tul.L. Rev. 712; Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845.
Plaintiffs’ entire testimony herein was to the effect that the entire construction — pile-driving, vibration of saws, trucks, etc.— caused their alleged damages. They explained the variance between their testimony given on deposition — to the effect that the pile-driving caused their damages —and their testimony given in court; they said, in effect, that when giving their depositions, they were not quite knowledgeable of what was being asked them. Plaintiffs affirmatively showed that they suffered damages to their property, and that such were caused by the operations of the defendants. Their testimony affirms the fact that they suffered continuous damages.
Defendants testified with respect to the four pictures, supra, taken of the interior of plaintiffs’ home before construction began. They made no showing as to when the damages testified to by plaintiffs (plaintiffs also offered pictures of the damages) occurred. Their testimony with respect to prescription was speculative. Mr. Paul Montelepre admitted that he attempted to negotiate with plaintiffs but was unsuccessful. Under such circumstances, we are constrained to find that the evidence of the plaintiffs preponderates to the effect that the damages suffered by them were continuous.
“Even if a plea of prescription were permissible in this case, plaintiffs would not have to show what part of their damages was suffered during the preceding *515 year, as contended by defendant, since the burden rests upon the party pleading prescription 'to show what portion of the damages proved occurred anterior to the year preceding the institution of the suit or in other words, to prove what part of the plaintiff's demand is prescribed.’ * * * Di Carlo v. Laundry & Dry Cleaning Service, 178 La. 676, 152 So. 327, 329.
“The defense that the claims of the plaintiffs are barred by the prescription of one year is equally without merit for the evidence unmistakably shows that the operating cause of the injury is a continuous one, giving rise to successive damages from day to day, and, under our law, in such cases prescription, whatever the length of time, has no application. * * *” Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816, 822. Cf. Freestate Industrial Development Co. v. T. & H., Inc., La.App., 188 So.2d 746.
As found supra, plaintiffs discharged their burden of proof; the burden of proof of prescription fell upon the defendants, and this they did not discharge. The jury was instructed by the trial judge with respect to prescription;[4] it also heard the arguments of counsel with respect thereto. We do not know the mental deliberations of the jury, but the record discloses that its verdict in favor of plaintiffs was for an amount substantially lower than that for which they prayed. Under the circumstances of this case, we therfore find that the Court of Appeal was incorrect in remanding the matter to the trial court for a determination of the question of the prescription of damages.
We conclude that under the facts of this case none of the damages found by the jury to have been suffered by plaintiffs had prescribed at the time they filed their petition.
For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is reversed and set aside, insofar as it reversed the judgment of the trial court in favor of plaintiffs and against Montelepre Realty *517 Co., Inc. in the sum of $1700.00; and its judgment remanding the matter for further proceedings is also reversed and set aside; since Gervais F. Favrot Co., Inc. did not apply for certiorari, its judgment is affirmed insofar as it reversed the judgment of the trial court dismissing the claim of Montelepre Realty Co., Inc. against Gervais F. Favrot Co., Inc.; its judgment is affirmed insofar as it affirmed the judgment of the trial court. All costs to be paid by Montelepre Realty Co., Inc.
McCALEB, J., concurs with written reasons.
BARHAM, J., concurs for reasons assigned by McCALEB, J.

. “5. Alternatively, in ordering a new trial conformable to tbe dictates of its opinion and decree where the opinion and decree, inferentially at least, indicates that the burden of proof to show which portions of the damages have prescribed and which portions have not prescribed is upon the plaintiffs rather than upon the defendant.
“6. Alternatively, in holding any part of the damages prescribed.”

. “Although a proprietor may do with his estate whatever he pleases, still he cau not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”

. In Klein v. Dept, of Highways, Fourth Circuit, La.App., 175 So.2d 454 (1965, Writ refused, 248 La. 369, 178 So.2d 658), the Court stated, “A cause of action under LSA-C.C. 667 is neither ex delicto nor ex contractu, but is a form of strict liability placed in the Civil Code under the chapter on servitudes imposed by law. * * * ” See, 26 La.L.Rev. 409.
In Burke v. Besthoff Realty Co., Fourth Circuit, La.App., 196 So.2d 293 (1967), the Court stated: “Strict liability is imposed upon landowners under LSA-C.C. art. 667 to the effect that one must not use his property in such a manner that it causes damage to a neighbor’s property. The action is not one in tort and there need be no proof of negligence on the defendant’s part for his liability to arise. All that need bo shown is that, as disclosed by a preponderance of the evidence, there exists a causal connection between the acts of one property owner and the damages suffered by the other.
In Gulf Insurance Co. v. Employers Liability Assur. Corp., Fourth Circuit, La.App., 170 So.2d 125 (1964, Rehearing denied 1965), the Court stated: “We are of the opinion that the obligation imposed upon land owners by Article 667, is an obligation owed to an indefinite class of persons and is therefore not a special obligation to particular persons * * * We are of the further opinion that the word ‘neighbor’ as used in Article 667 is indefinite and refers to any land owner whose property may be damaged irrespective of the distance his property may be from that of the proprietor whose work caused the damage. It is not different from the duty spoken of in tort actions as being ‘owed to the whole world,’ which simply means a duty owed to the class of persons who may be injured thereby.
“All of the decisions heretofore rendered seem to have granted tort damages for the violation of Article 667 but none of *513 them have apparently decided that it was or was not a tort.
“It is our opinion that the violation of the duty set out by Article 667 constitutes ‘fault’ within the meaning of Article 2315,
"As we analyze the cases in which the expression ‘liability without fault’ has been used, we are of the opinion that wliat was really meant was ‘liability without negligence.’ We are therefore of the opinion that an action based on Civil Code Article 667 prescribes in one year under the provisions of Civil Code Article 3536.” Cf. 27 La.L.Rev. 438; Hamilton v. City of Shreveport, La.App., 180 So.2d 30; Loesch v. R. P. Farnsworth & Co., 12 So.2d 222.

. « * * * You’re charged that prescription which bars a claim for damages runs from the day on which the damage was sustained or from the day on which the injured party first had knowledge of the damage or should have had knowledge of it. Now, gentlemen, I would like to say a word to you about prescription, because perhaps it is a term that you’re not familiar with. Under the law a plaintiff has certain rights or causes of action, and it also affords to the defendant a bar to that action by the lapse of time. * * Now I’m going to read you some charges requested by the defendants and approved by the Court, and the first one is on behalf of the Montelepre Bealty Company. The Plaintiffs may not recover from the defendant Montelepre Bealty Company, Inc. for damages resulting from the pile-driving operations, whether those damages be for damage to property or for worry and inconvenience and mental anguish, if you find their suit was filed more than one year after the piledriving operations ended. * * * ”