314 So.2d 430 (1975)
J. Clyde DEAN
v.
HERCULES, INC.
No. 10212.
Court of Appeal of Louisiana, First Circuit.
May 21, 1975.
Rehearing Denied June 30, 1975.
Writ Granted September 19, 1975.
*431 G. William Jarman, Baton Rouge, for appellant.
Paul G. Borron, III, Plaquemine, for appellee.
Before: SARTAIN, ELLIS, and BARNETTE, JJ.
ELLIS, Judge.
This is a suit for property damage suffered by plaintiff J. Clyde Dean. Defendant is Hercules, Incorporated, which operates a chemical plant on property adjoining that owned by plaintiff. In his petition, plaintiff alleges his cause of action as follows:

III.
"During a time period in 1970 and/or 1971, the defendant's plant emitted certain chemical substances into the atmosphere which substances came onto and in contact with Petitioner's property upon which was situated an orchard of peach trees, a pecan orchard, moss-covered cypress trees and various other *432 trees and fruit trees, all the property of the Petitioner herein.

IV.
"As a result of said contact by the chemicals emitted by defendant, the peach orchard was completely destroyed, the moss was killed in the cypress trees, the pecan orchard did not yield properly and other fruit trees were adversely affected.

VIII.
"Said damage is of a continuing nature in that Petitioner would have to remove all of the dead trees from the orchard in order to replant, and, further the area may still be affected by the chemicals emitted in such a manner as to make replanting impractical or impossible."
Defendant filed a peremptory exception of the prescription of one year, based on the allegations of Article III of the petition and the fact that plaintiff's suit was filed on April 1, 1974, more than one year after the damage allegedly took place. After a hearing, the exception was sustained, and plaintiff's suit dismissed. From the judgment of dismissal, plaintiff has appealed.
Plaintiff's cause of action is based on Article 667 of the Civil Code, which provides:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
Under our system of fact pleading it is ordinarily not necessary for a party to characterize his cause of action or state the theory of his case. He is entitled to relief under any theory of law which may be justified under the relevant facts properly proven at trial. Articles 862, 2164, Code of Civil Procedure; Gray & Company, Inc. v. Ranger Insurance Company, 292 So.2d 829 (La.App.1st Cir. 1974).
In this case, however, defendant claims that plaintiff's cause of action is delictual in nature, and therefore subject to the prescription of one year under Article 3536 of the Civil Code. It is argued that a breach of the duty imposed by Article 667 constitutes fault under Article 2315, which deals with liability for offenses.
Plaintiff takes the position that an action under Article 667 is something other than delictual in nature, and prescribes in ten years under Article 3544 of the Civil Code.
Both this court and the Fourth Circuit Court of Appeal have held that an action for damages under Article 667 is delictual in nature and prescribes in one year. Gulf Insurance Company v. Employers Liability Assur. Corp., 170 So.2d 125 (La.App. 4th Cir. 1964); Union Federal Savings and Loan v. 451 Florida Corp., 256 So.2d 356 (La.App. 1st Cir. 1971).
In other cases, not concerned with the applicable prescriptive period, the cause of action has been called "neither ex contractu nor ex delicto" and "not one in tort." Klein v. Dept. of Highways, 175 So.2d 454 (La.App. 4th Cir. 1965); Burke v. Besthoff Realty Co., 196 So.2d 293 (La.App. 4th Cir. 1967).
In Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627, 631 (1968), the Supreme Court said:
"Recent jurisprudence indicates that the courts have vacillated in their determinations as to whether a cause of action under LSA-C.C. Article 667 is ex contractu or ex delicto. Such designation has a direct effect on the application of prescription to the facts of the case. Our findings infra make it unnecessary for us to pass on the question in this opinion."
*433 In a concurring opinion in the same case, two of the justices expressed the opinion that the cause of action is one in quasi contract under Article 2292 of the Civil Code, and prescribes in ten years.
We further note, however, that in the majority opinion in Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133, 139 (1971), it was said:
"As recently as 1968 in Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627, this court allowed recovery for damage from pile driving. Although the court there applied Article 667, it specifically decided the action arose ex delicto and was prescribed by one year."
See also Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975); Giardina v. Marrero Furniture Company, Inc., 310 S.2d 607 (La.1975).
Doctrinal writers in Louisiana have also differed as to the characterization of an action for damages under Article 667. See Stone, Tort Doctrine in Louisiana: The Obligations of Neighborhood, 40 Tul. L.Rev. 701, 708 (1966); Malone, The Work of the Louisiana Appellate Courts, 1969-70; Torts, 31 La.L.Rev. 231 (1971); Yiannopoulos, Civil Responsibility in the Framework of Vicinage: Articles 667-69 and 2315 of the Civil Code, 48 Tul.L.Rev. 195 (1974); Dainow, The Work of the Louisiana Appellate Courts for the 1965-66 Term, 26 La.L.Rev. 459, 538 (1966).
The nature of the obligation breached determines the applicable prescriptive period. Article 3531, Civil Code. In order to place the cause of action here presented in its proper place, it is necessary to examine the general principles pertaining to Obligations in the Civil Code, since offenses, quasi offenses, contracts, and quasi contracts all fall within this general area. In the general articles relating to Obligations, in Book III, Title III of the Civil Code, we find the following:
"Art. 1756. An obligation is, in its general and most extensive sense, synonymous with duty.
"Art. 1757. Obligations are of three kinds: imperfect obligations, natural obligations, and civil or perfect obligations.
"1. If the duty created by the obligation operates only on the moral sense, without being enforced by any positive law, it is called an imperfect obligation, and creates no right of action, nor has it any legal operation. The duty of exercising gratitude, charity and the other merely moral duties, is an example of this kind of obligation.
"2. A natural obligation is one which can not be enforced by action, but which is binding on the party who makes it, in conscience and according to natural justice.
"3. A civil obligation is a legal tie, which gives the party, with whom it is contracted, the right of enforcing its performance by law.
"Art. 1760. Civil obligations, in relation to their origin, are of two kinds:
"1. Such as are created by the operation of law.
"2. Such as arise from the consent of the parties who are bound by them, which are called contracts or conventional obligations.
"Each of these divisions will form the subject of a separate title."
In the Civil Code of 1870, Article 2292, which is the general article of Title V, reads as follows:
"Certain obligations are contracted without any agreement, either on the part of the person bound or of him in whose favor the obligation takes place.
"Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.

*434 "The first are such engagements as result from tutorship, curatorship, neighborhood, common property, the acquisition of an inheritance, and other cases of a like nature.
"The obligations, which arise from a fact, personal to him who is bound, or relative to him, result either from quasi contracts, or fron offenses and quasi-offenses."
The last paragraph of the foregoing article in the original French version, found in Article 2271 of the Code of 1825, reads as follows:
"Les engagemens, qui naissent d'un fait personnel à celui qui se trouve obligé, ou relatif à lui, résultent ou des quasi-contracts, ou des délits et quasi-dé lits."
The word "fait" would today be better translated as "act" rather than "fact." At the time of the drafting of the 1808 and 1825 Codes, "fact" and "act" were virtually synonymous. See Webster, A Compendious Dictionary of the English Language, Sidney's Press, New Haven, 1806, in which "fact" is defined as "an act, action, deed, reality, truth, product." The suggested translation would be consistent with the translation of "fait" as "act" in the second paragraph of Article 2292. The said paragraph should now read:
"The obligations, which arise from an act, personal to him who is bound, or relative to him, result either from quasi contracts, or from offenses and quasi-offenses."
It is apparent from the foregoing code articles that the law recognizes two major types of civil obligations: those arising from the consent of the parties, and those arising by operation of law, without an exercise of the will of the party bound.
The latter class of civil obligations is further subdivided by Article 2292 into (1) those "imposed by the sole authority of the laws" and (2) those resulting "from an act done by the party obliged, or in his favor." The first of these, "imposed by the sole authority of the laws," are those obligations or duties which devolve upon one by virtue of some status which he enjoys, which obligations are usually delineated by the law. The article mentions tutorship, curatorship, neighborhood, common property and inheritance as examples of conditions which impose and define such obligations. The second class of civil obligations arising by operation of law includes those which result from an act by virtue of which a party becomes personally bound, regardless of his will or of any particular legal status. It seems clear that only this second class of civil obligations created by operation of law is included within the classification of offenses and quasi offenses (arising from an act done by the party bound) and quasi contracts (arising from an act done in his favor).
It is equally apparent that a civil obligation "imposed by the sole authority of the law" does not fall within the category of offenses and quasi offenses. The obligations arising under Article 667 result from neighborhood and from status as a proprietor. These obligations do not necessarily arise from delictual behavior, from conventional obligations, nor quasi contract, but rather from a duty imposed by law on all persons enjoying that status. An action for the breach of such an obligation prescribes in ten years under Article 3544 of the Civil Code.
It is true that the breach of an obligation imposed by Article 667 could also constitute an offense under Article 2315, and the plaintiff may pursue his remedy under either theory or both. If it be necessary to elect a theory in order to escape the consequences of prescription, plaintiff may elect the theory more favorable to him in that respect. See Gray & Company, Inc. v. Ranger Insurance Company, supra.
*435 We are of the opinion that an action for damages for breach of an obligation arising under Article 667 of the Civil Code is not delictual in nature, and is not subject to the prescriptive period of one year under Article 3536 of the Civil Code. We think such an action prescribes in ten years under Article 3544 of the Civil Code, and reverse our holding to the contrary in Union Federal Savings and Loan v. 451 Florida Corp., supra.
The judgment appealed from is therefore reversed and set aside, and the case remanded to the trial court for further proceedings in accordance with law. Defendant is to pay all costs of this appeal. Assessment of other costs shall await the final disposition of the case on its merit.
Reversed and remanded.
BARNETTE, Judge (concurring).
Plaintiff filed suit for damages April 1, 1974 for the alleged destruction of his peach and pecan orchards and damage to other trees, which he alleged occurred in 1970 and 1971. The defendant filed a plea of prescription of one year under LSA-C. C. art. 3536. After defendant's exception of prescription was filed, the plaintiff filed a supplemental and amending petition, specifically pleading a cause of action under LSA-C.C. art. 667. The only question before us is whether plaintiff's suit is barred by the prescription of one year under LSA-C.C. art. 3536 which provides in pertinent part:
"The following actions are also prescribed by one year: * * * that for damages * * * resulting from offenses or quasi offenses. * * *"
or by the authority of LSA-C.C. art. 3544, which provides as follows:
"In general, all personal actions, except those before enumerated, are prescribed by ten years."
In brief, it is plaintiff's contention that his cause of action derives from the authority of LSA-C.C. art. 667 which is as follows:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
This, he contends, creates an obligation by operation of the law, LSA-C.C. art. 1760, and constitutes a quasi contract between him and the defendant as adjoining property owners, LSA-C.C. art. 2292. Upon this theory he contends that the applicable prescriptive limitation to his action is ten years.
Since no negligence, imprudence or want of skill is alleged, it is conceded that whatever cause and right of action plaintiff has for the recovery of damages emanates from the authority of LSA-C.C. art. 667. His cause of action is discussed more fully below.
In the recent case of Union Federal Savings and Loan v. 451 Florida Corporation, 256 So.2d 356 (La.App. 1st Cir. 1971), this Court decided the question here presented and found the one year prescriptive limitation of LSA-C.C. 3536 to be applicable. In that case the plaintiff property owner brought suit under LSA-C.C. art. 667 to recover damages alleged to have been caused by construction operations on the adjacent property. The factual situation there presented is a close analogy to that presented in this case.
In that case this Court said:
"We are of the opinion that it is now well settled that the prescriptive period as applicable to LSA-C.C. art. 667 is that of one year. In Gulf Insurance Co. v. Employers Liability Assur. Corp., 170 So.2d 125, at page 127, La.App. 4 Cir. (1965), the Court said:
`While negligence is an example of "fault" within the meaning of Article 2315, it is well settled that the obligation *436 imposed upon proprietors by Article 667 is absolute and that proof of negligence is not required in order to recover for a violation or breach thereof.'
"The Court further stated at page 129 that:
`As we analyze the cases in which the expression "liability without fault" has been used, we are of the opinion that what was really meant was "liability without negligence." We are therefore of the opinion that an action based on Civil Code Article 667 prescribes in one year under the provisions of Civil Code Article 3536.'
"See also Craig v. Montelepre Realty Co., 202 So.2d 432, La.App. 4 Cir. (1967), [252 La. 502, 211 So.2d 627 (1968)]; Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971)."
Counsel for appellant in his brief before this Court cites with approval what he terms a criticism of the Fourth Circuit Court of Appeal opinion in the Gulf Insurance Company v. Employers Liability Assurance Corporation, 170 So.2d 125 (La. App. 4th Cir. 1964), by the writers of certain Law Review articles, XXVI La.L.Rev. pp. 409 and 538. In the latter article by Professor Joseph Dainow of the Louisiana State University Law School, the writer said of the Court (Fourth Circuit):
"* * * The court discussed the misleading question of whether the action was ex delicto or ex contractu, concluding that it was the former and therefore prescribed. Actually, it is neither, but rather an action for violation of a property limitation imposed by law; and in the absence of any express prescription for actions in damages resulting from violation of legal servitudes, the general ten-year prescription for personal actions should apply." pp. 538, 539.
The majority has adopted this opinion and with very persuasive reasons concludes that the action is governed by the ten year limitation applicable to personal actions generally. There is much support for this theory which I find well expressed by Justice McCaleb in his concurring opinion in Craig v. Montelepre Realty Company, cited below. I will concur in the majority opinion. The contrary view holding to the application of LSA-C.C. art. 3536 is equally supported by the Law Review writers and jurisprudential authority. The opinions of these writers and the conflicting jurisprudence should not be rejected without full consideration. For that reason I will attempt a more thorough discussion of the subject than ordinarily would be called for.
The act, that is, the "making of any work" by the proprietor of the estate, which causes damage to his neighbor obliges him [the offending neighbor] by whose fault it happened to make reparations. LSA-C.C. art. 2315. The duty imposed on the proprietor is couched in negative terms. It declares that he shall not do certain things. A violation of that duty contemplates some affirmative act as distinguished from an act of omission, such as the failure to perform a service contracted for.
"It is our opinion that the violation of the duty set out by Article 667 constitutes `fault' within the meaning of Article 2315."
So said the court in Gulf Insurance Company v. Employers Libility Assurance Corporation, supra. This, I think, is a thoroughly sound and logically reasoned conclusion. LSA-C.C. art. 2315 imposes an obligation to make reparation for every act which causes damage to anotherbut only when the act is attended by the doer's fault. To define and enlarge the scope of fault, the lawmakers then wrote Article 2316 which significantly provides coverage for damage occasioned "not merely by his [the doer's] act but by his negligence, his imprudence, or his want of skill." The following Articles 2317-2324 further extend the fault concept to cover acts done by other persons for whom one is responsible.
*437 Obviously a master is not at fault in the literal sense when, without his knowledge or control, his servant commits a tort, nor a father for his minor son, etc., and there would be no cause or right of action against the master or father for the damage caused by such act except for the above codal articles which have extended the fault concept to create that right of action in such case situations. By the same analogy a proprietor of an estate would not be obligated to make reparation to his neighbor for any work made or act done lawfully and without negligence on his property which causes damage to his neighbor, except that Article 667 has extended the fault concept to cover such acts.
In the father-son or master-servant situation the cause of action is the offensive act done which causes damage and exists by authority of Article 2315 in conjunction with 2317, 2318 and 2320. Except for those additional articles there would be no cause of action under Article 2315 against the father or the master for the tortious act, committed not by him but by the minor child or servant. Likewise, where there is no negligence, imprudence or want of skill, except for Article 667 there would be no cause or right of action to seek reparation in damages for the offensive act complained of in this case under Article 2315, and unless a cause of action can be found under another theory, the right of action would prescribe in one year. The majority opinion is based on the theory that plaintiff has alleged the breach of a civil obligation "imposed by the sole authority of the law" and therefore holds "an action for the breach of such an obligation prescribes in ten years under Article 3544 of the Civil Code."
It is significant that LSA-C.C. art. 667 merely declares a moral and legal principle. It makes no provision for redress when its "Golden Rule" concept is violated. Clearly a cause of action would lie in equity, without specific authority, to proceed by injunction to enforce the predial obligation which the article imposes on one estate in favor of the other. But we must look elsewhere to find authority to compel reparation in terms of monetary compensation for the damages caused by doing that which the article says the proprietor "can not" do.
Where then do we look for this authority? Is it C.C. Article 2315 or C.C. Article 1926? We may paraphrase Article 2315 to fit the situation in this case as follows:
"Every act of the proprietor which causes damage to his neighbor obliges him by whose fault [the violation of Article 667] it happened to repair it."
Under the rationale of the majority opinion we may apply C.C. Article 1926, which paraphrased to fit this case situation, provides in pertinent part:
"On the breach of the obligation not to do that which is prohibited by Article 667, the obligee is entitled to damages * * * according to the rules established in the following section."
It is my opinion that either theory could be maintained with equal logic, therefore, I will concur in the decision of the majority to apply the latter, but I am unwilling to agree with the majority that the breach of an obligation arising under Article 667 of the Civil Code is not delictual in nature. The two theories are, however, mutually exclusive. Either one or the other must be applied and the decision as to which one to apply must be determined not by public policy or what we think would be the more practical, or what the law should be, but what the law is. Surely the redactors of Article 667 did not foresee the consequence of their having failed to provide specifically for, and to prescribe the rules to govern, actions for damages resulting from violation of the limitations imposed.
It would serve no useful purpose to indulge in speculation as to what the redactors of Article 667 might have intended with regard to actions for damages under *438 the article. It might conceivably be argued that they did not intend that action for reparation for damage would lie in the absence of negligence, imprudence or want of skill, for which provision already existed, and that they intended merely to provide a basis for injunctive relief.
I must concede therefore that the conclusion reached by the majority is founded on a rationale which must prevail over that to which I have held and which I now yield with reluctance.
In my past experience in cases involving LSA-C.C. art. 667, I have held to the opinion that the damage complained of is delictual in nature and actions based thereon should be governed accordingly. I am still firm in that conviction. I must acknowledge that my reluctance to subscribe to the opposing theory is in part influenced by my opinion that it will open the door to potential abuse and miscarriage of justice. To have an action for damages of this nature in suspension for a long period, up to ten years, is contrary to reason and practicality. It could result in denial to a defendant of the means to obtain, at a late date, evidence to defeat the action or minimize the damage which he might have obtained if he had been apprised timely of his exposure to suit. This may be a concern worthy of legislative consideration.
I find support for the views I have expressed in the concurring opinion of Justice Barham in Hero Lands Company, et al. v. Texaco, Inc., 310 So.2d 93 (La.1975) wherein he said:
"Pointedly, a breach of the legal servitude imposed by Article 667 is a delict just as a breach of contract may also be a delict. Actually, whether responsibility under Article 667 involves delicts is immaterial in a suit to enforce the legal servitude provided for in that article. That liability in damages may also be imposed in lieu of and in addition to injunctive relief because of delictual conduct giving rise to damage under Article 667 does not foreclose an action for those damages under Article 2315. * * *" 310 So.2d at p. 99 (Emphasis in the original)
I concur in the distinction made by Justice Barham between actions under Article 667 to enforce the servitude and those for damages. A further distinction should be made between actions under Article 667 for damage to the proprietor as a property owner and damage to him by injury to his person. What then of injury, from the same cause, to a licensee on his property? Shall one prescription apply to the property owner and another to his guest? These are questions which the rationale of this opinion portends.
I wish to discuss further the nature of actions under C.C. Article 667 to answer certain critics who apparently have misinterpreted earlier opinions of the appellate courts involving the application of LSA-C.C. art. 667.
Counsel for appellant in his brief before us interprets the opinion of the Fourth Circuit Court of Appeal in the Gulf Insurance case as categorically holding the action for damages under Article 667 to be one "ex delicto," and then says:
"The Fourth Circuit later disagrees with its classification of the action under 667 in Burke v. Besthoff, 196 So.2d 293 (La.App. 4th Cir. 1967) and Klein v. Department of Highways, 175 So.2d 454 (La.App. 4th Cir. 1965), [248 La. 369] 178 So.2d 658, writ refused."
This is not an accurate interpretation. In the first place, while it is true that in Gulf Insurance Co., the Court said:
"If it [the action for damages] arises ex delicto it is governed by the prescription of one year * * *." and "If it arises ex contractu it is governed by the prescription of ten years * * *,"
it did not categorically hold it to be an action ex delicto, but drew a close analogy to *439 tort actions and applied the one year prescription. Specifically the Court said:
"We are of the opinion that the obligation imposed upon land owners by Article 667, is an obligation owed to an indefinite class of persons and is therefore not a special obligation to particular persons such as we have in Dawkins [Dawkins v. Mitchell, 149 La. 1038, 90 So. 396]. We are of the further opinion that the word `neighbor' as used in Article 667 is indefinite and refers to any land owner whose property may be damaged irrespective of the distance his property may be from that of the proprietor whose work caused the damage. It is not different from the duty spoken of in tort actions as being `owed to the whole world,' which simply means a duty owed to the class of persons who may be injured thereby.
"All of the decisions heretofore rendered seem to have granted tort damages for the violation of Article 667 but none of them have apparently decided that it was or was not a tort.
"It is our opinion that the violation of the duty set out by Article 667 constitutes `fault' within the meaning of Article 2315, or as said in Hauck v. Brunet [La.App., 50 So.2d 495] supra `the damage itself to the neighboring property constituted fault.'
"As we analyze the cases in which the expression `liability without fault' has been used, we are of the opinion that what was really meant was `liability without negligence.' We are therefore of the opinion that an action based on Civil Code Article 667 prescribes in one year under the provisions of Civil Code Article 3536." 170 So.2d at p. 129. (Emphasis in the original)
There is no conflict between that opinion and the later cases of Klein v. Department of Highways, 175 So.2d 454 (La.App. 4th Cir. 1965), writ refused 248 La. 369, 178 So.2d 658 and Burke v. Besthoff Realty Company, 196 So.2d 293 (La.App. 4th Cir. 1967), by other panels of the same court.
The writer of this opinion was also the author of the opinions in Klein and Burke, while serving by assignment as a judge on the Fourth Circuit Court of Appeal. We said in Klein:
"A cause of action under LSA-C.C. 667 is neither ex delicto nor ex contractu, but is a form of strict liability placed in the Civil Code under the chapter on servitudes imposed by law. * * *"
and
"We are of the opinion that the action under LSA-C.C. 667, for the purposes of LSA-R.S. 48:22, is more analogous to an action ex delicto * * *."
In Burke the writer said:
"Strict liability is imposed upon landowners under LSA-C.C. art. 667 to the effect that one must not use his property in such a manner that it causes damage to a neighbor's property. The action is not one in tort and there need be no proof of negligence on the defendant's part for his liability to arise."
In neither of these cases was prescription an issue.
There is certainly no conflict between these opinions (which this writer still holds to be a correct interpretation of actions under LSA-C.C. art. 667) and that in the Gulf Insurance Company case, but on the contrary, they are in perfect accord in that they show the analogy between actions for damages under LSA-C.C. art. 667 and actions for damages arising ex delicto.
The analogy is very plain. The damage which the plaintiff alleged was done to his orchard is in no wise different in nature from the damage which would have resulted if his neighbor had negligently driven a truck laden with poisonous chemicals onto his property, overturning and releasing the chemicals among his trees; or if he had been damaged through imprudence or want *440 of skill. The only difference in his suit for reparation is that he is not required to prove negligence, imprudence or want of skill, to establish "fault." This element, necessary for recovery of damages is supplied by LSA-C.C. art. 667. In one case the cause of action is found in Article 2315 in conjunction with Article 2316 and the other in Article 2315 in conjunction with Article 667. The procedure in either case would be to seek reparation in terms of monetary compensation to the proprietor for an act committed which caused him damage. Whether under Art. 2316 or 667 the same rules of judicial procedure should apply. The acts are equally offensive to the party damaged and a suit for reparation in either case is one for damage from a quasi offense.
But under the theory applied by the majority, a proceeding for damages might be brought under Article 667 without combining it with Article 2315 simply based on the breach of an obligation imposed by the authority of law and therefore governed by the rules relating to quasi contracts. I am persuaded to concur in this theory by the rationale expounded by Justice McCaleb in his concurring opinion in Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968).
Several Law Review Articles[1] have been brought to our attention which deal with several aspects of LSA-C.C. 667 including the prescriptive limitation of actions brought under its authority. The writers are not in full agreement on this point and each supports his theory with persuasive reasoning.
In Craig v. Montelepre Realty Co., supra, Justice-ad-hoc Gladney said:
"Recent jurisprudence indicates that the courts have vacillated in their determinations as to whether a cause of action under LSA-C.C. article 667 is ex contractu or ex delicto. [citing Klein, Burke, and Gulf Insurance Co.] Such designation has a direct effect on the application of prescription to the facts of the case. Our findings infra make it unecessary for us to pass on the question in this opinion." (Emphasis added) 211 So.2d at p. 631.
I do not share the opinion that there has been a vacillation as stated by Justice Gladney, particularly in the cases cited. Wherever the question of prescription has been an issue in suits for damages, it has been resolved in favor of the one year limitation. In the Craig case the Court found it "unnecessary" to decide the question, but a reading of the opinion, which found the damage to be continuous to a time within one year of the filing of suit, implies strongly that the Court was of the opinion that the one year prescription was logically and probably applicable. Otherwise there would have been no need for the court to devote a lengthy discussion to the question of continuing damage to overcome the one year bar. Since the Court did not categorically decide the prescription issue, this opinion is not therefore in conflict.
I concur in the decree for the reasons herein given.
NOTES
[1] Yiannopoulos, Civil Responsibility in the Framework of Vicinage: Articles 667-69 and 2315 of the Civil Code, 48 Tul.L.Rev. 195 (1974); Dainow, The Work of the Louisiana Appellate Courts for the 1971-1972 TermPrescription, 33 La.L.Rev. 235, 241 (1973); Malone, The Work of the Louisiana Appellate Courts for the 1960-1970 Term Torts, 31 La.L.Rev. 231 (1971); Godfrey, Civil Law PropertyPrescriptionPrescriptive Period Applicable to Actions Based on Article 667, 26 La.L.Rev. 409 (1966); Stone, Tort Doctrine in Louisiana: The Obligations of Neighborhood, 40 Tul.L.Rev. 701, 708 (1966).