DOUCET, Judge.
In this mineral lease dispute the trial court sustained the plaintiff-lessees’ exception of prescription and dismissed the defendants’ reconventional demand insofar as it pertained to an alleged tort that occurred more than one year prior to said demand. The reconventional demand was filed in response to a petition for a declaratory judgment seeking enforcement of the oil, gas and mineral lease which is the object of litigation. The tort alleged was changing the effective date of the mineral lease and recording the altered lease in the public records. The defendants appeal, alleging the trial court erred in (1) finding the doctrine of contra non valentem inapplicable, and (2) concluding the alleged actions of lessees were not a continuing tort. We affirm.
The trial judge assigned excellent reasons for judgment which we adopt hereinafter as our own.
“On August 23, 1982, this Court was presented with various rules and exceptions. By stipulation the parties agreed to waive a jury trial and to respond to the plaintiff’s discovery. Evidence was presented on two issues. First being the question of whether any action that the lessors may have had, had prescribed. Second was the issue whether the lessors have stated a cause of action.
The pending litigation was commenced by the filing of a petition for declaratory judgment by General American Oil Company of Texas, Santa Fe Minerals, Inc., the Stone Oil Corporation and May Petroleum, Inc. These lessees or assigns seek to have this Court resolve a contractual uncertainty concerning the force and effect of an oil, gas and mineral lease. This uncertainty was created because of a dispute between the lessees and the seven landowners, the lessors, regarding the effective date of the lease in question.
NO CAUSE OF ACTION
It is the ruling of this Court that the effective date of the lease is not at this time before the court. Because of this ruling and the nature of the exception of no cause of action, filed on behalf of the lessees, the exception will be referred to the merits. The Court notes that the answer, affirmative defense and reconven-tional demand filed on behalf of the lessors seek damages “as a result of the slandering of the title on the aforedescribed property.” While Louisiana has adopted fact pleading and has suppressed the theory of the case doctrine, this Court believes it must recognize, at this time, that there is not a slander of title giving rise to the traditional jactitory action which is now but a part of the possessory action. Since the *498 lessor and lessee cannot be deemed to possess adversely and the lessors are not allowed to bring a real action against the lessee concerning the question of whether a lease has expired, the disturbances in law for which CCP 3659 provides a cause of action is not met. CCP 3670. Defendants and plaintiffs in reconvention have agreed to and were ordered to amend their recon-ventional demand so as to state an alternative demand based on plaintiffs and defendants in reconvention refusal to cancel the lease in question in the Clerk’s Records.
PRESCRIPTION
The petition in reconvention and the second supplemental and amending recon-ventional demand filed on behalf of the landowners seeks damages for the alleged alteration of an oil, gas and mineral lease on or before September 6, 1977. Counsel for the lessors assert that the damages they allege arise ex contractu and thus the ten year prescriptive period of C.C. Article 3544 should be applied. In support of this contention counsel cites the case of Federal Insurance Co. v. Insurance Co. of No. America, 262 La. 509, 263 So.2d 871 (1972) which provides:
“that when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions.”
But counsel failed to cite the following sentence which provides that “In such cases, the prescription applicable is determined by the character which plaintiff gives his pleadings and the form of his action.”
This court holds that one year tort prescriptive period must be applied to this case. C.C. Article 3536. The alleged alteration of the mineral lease by Messrs, de-Gravelle, Daigle and Thomas is a claim based in tort. Their alleged actions, if proven, do not arise out of a contractual relationship but rather on a wrong independent of the contract. Further, the recon-ventional demand does not seek recompense under the terms of the contract. The alleged damages result from an “inability to lease.” Such damages could only have arisen after the termination of the mineral lease, for by its very nature a mineral lease prevents the landowners from further leasing the land for exploration and production of the minerals during its term.
The reconventional demand was filed on September 3, 1980 more than three years after the alleged tortious conduct and thus under C.C. Article 3536, no suit can be maintained on such a cause of action unless the running of the prescriptive period has been suspended or interrupted. It is the contention of the landowners that any prescriptive period had not yet commenced to run prior to their filing of the reconventional demand because of the doctrine that a continuing act that causes damage prevents the running of prescription until that act is completed. The claimed continuing act giving rise to the successive damages in this case was the recordation of the lease which slandered the landowner’s titles. As the court has previously stated there has been no disparagement of the landowners’ titles and accordingly no slander of title by the recordation of the lease in question. Thus the Court holds inapplicable the case of Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968) which sets forth the jurisprudence regarding a continuing act which prevents the running of prescription.
Also presented to the Court was the contention that the landowners first knowledge of the alleged unauthorized alteration of the effective date of the lease occurred in 1980. The lease in question provided for a three year primary term and the landowners claim that it was the activities of the lessees after this primary term which caused them to first question the terms of the lease and to seek the counsel of Mr. Nolan Edwards, a member of the Louisiana bar. On this ground the lessors rely upon the doctrine of contra non valentum agere nulla curiet praescriptio, that is, as *499 to a person unable to bring an action no prescription runs. Hyman v. Hibernia Bank & Trust Company, 139 La. 411, 71 So. 598 (1916).
Here the burden of proving that the cause of action had not prescribed is upon the lessors. Steel v. Aetna Life & Casualty, 304 So.2d 861 (La.App. 3rd Cir.1974). It is the lessors burden to prove that the cause of action was not known or reasonably knowable until 1980. This Court holds that the seven lessors have failed to prove that the oil companies prevented them from obtaining information regarding the alleged variance of the effective date of the lease. On the contrary, the evidence establishes that recorded lease executed in two counterparts shows an effective date of June 20, 1977, and more importantly the delay rental checks of both The Stone Oil Corporation and General American Oil Corporation of Texas display the June 20, 1977 date.
Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970) provides:
“The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only when such ignorance is not wilful and does not result from negligence ... Also, it is not necessary that the party have actual knowledge of the conditions as long as there is ‘constructive notice.’ Whatever is notice enough to excite attention and put the owner on his guard and all for inquiry is tantamont to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.”
The delay rental payments made by The Stone Oil Corporation in 1978 to the seven lessors through their depository banks all had the following language:
“This payment is for rental in lieu of development under, and continues in force that certain Oil, Gas and Mineral Lease Dated June 20, 1977 .... ” “This payment is made for the period from June 20, 1978 to June 20, 1979 and is made on behalf of The Stone Oil Corporation.”
These checks were received by five different depository banks and by stipulation the parties agreed that these banks received both the top portion of the check, the draft on Hibernia National Bank in New Orleans, and the lower portion of the document which refers to the June 20, 1977 date.
By further stipulation the parties agreed it was the customary banking practice for each of the five depository banks to mail to each of the landowners a copy of the delay rental check. Louisiana jurisprudence has adopted “a presumption of due receipt by addressee of a letter properly addressed, postage stamped and mailed.” New Orleans Silversmith, Inc. v. Wormser, 258 So.2d 592 (La.App. 4th Cir.1972). By stipulation the parties agreed the banks sent to the landowners either a cashier’s check or a deposit slip along with a copy of the delay rental by first class prepaid postage to a proper address within an envelope with a return address.
The Court notes the Fourth Circuit in New Orleans Silversmith, Inc., supra, held the testimony of the defendant that he did not recall receiving the letter did not overcome the rebuttable presumption of receipt of the mailing.
This Court holds that even without the presumption established by the mailing of the copy of the delay rental check the depository banks must be considered agents of the lessors. These banks were designated under the lease to act as depository for the landowners and under basic mandate law the knowledge of an agent, mandatory, is imputed to the principal. Such knowledge “is imputed to the principal even if the agent neglected to specifically convey those facts to the principal.” Bank of Louisiana v. Argonaut Insurance Company, 248 So.2d 349 (La.App. 4th Cir.1971).
1. Loyce Meche
The Stone Oil Corporation by check dated May 25, 1978, paid $2,006 to the Bank of *500 Commerce & Trust Company of Rayne for “that certain Oil, Gas and Mineral Lease date June 20, 1977” to cover “the period from June 20, 1978 to June 20, 1979.” The depository bank by cashier’s check paid the $2,005 delay rental. The evidence establishes that this cashier’s check was cleared and paid on June 16, 1978. In a similar manner General American Oil Company of Texas paid the 1979 delay rental for the June 20, 1979 to June 20, 1980 period. The bank again by cashier’s check in 1979 paid the $2,005 which cleared on June 12, 1979. No testimony was offered by Ms. Meche to overcome the evidence that the banking practice of the Bank of Commerce & Trust Co. of Rayne was to send a copy of the delay rental payment, accordingly this Court holds that her cause of action has prescribed.
2. Leoval Meche
The Bank of Commerce & Trust Co. of Rayne also acted as the depository bank for Leoval Meche. Stone in 1978 made the delay rental check payable to the bank under the same terms as its check for the account of Joyce Meche. On June 1, 1978, the $2,005 delay rental was deposited in the same bank. The General American payment in 1979 for Leoval was made on the same check as the payment of Joyce Meche. Like Joyce Meche, Leoval did not testify and this Court holds his cause of action has prescribed under the one year tort prescription.
3. Cleven Meche
Mr. Meche, also known as Cleveland Meche, using the Rayne State Bank & Trust as his depository bank had the $2,010, less a $5 processing fee, deposited for his account. In 1979, similar action was taken with the General American check. He testified that with regard to the delay rentals “I got a note from the bank that I had a draft deposited there.” (Tr. p. 11, lines 13 and 14). At the deposition of Mr. Meche on May 23, 1981, he handed to Mr. Simon, attorney for General American, a document he received from the bank in 1978. (Tr. p. 12, line 8). This document was The Stone Oil rental check with the attached stub which refers to June 20, 1977. There is thus no question that Mr. Meche had notice of the lease being dated June 20, 1977 rather than May 26, 1977. As to Mr. Cleven Meche, the exception of prescription is sustained.
4. Willie Belle Meche Efferson
Using the Central Bank & Trust Company of Boyce as her depository Mrs. Effer-son received the 1978 Stone payment which was deposited to her account on June 6, 1978 and the 1979 General American payment which was deposited on May 24, 1979. She responded, “Yes, except the date.” (Tr. p. 37, line 18) to a question asking if she had seen the May 25, 1978 Stone Oil rental cheek or any portion of it. Likewise, she acknowledged receipt of the delay rental payment by General American for.the June 20, 1979 to June 20, 1980 period. (Tr. p. 38, line 1). Her action has prescribed.
5. Lorena Meche Reynaud
Mrs. Reynaud’s 1978 payment made through the First National Bank in DeRid-der was paid by that bank’s cashier’s check, which was cleared on June 8, 1978. The 1979 payment was also made by the bank through the use of a cashier’s check which cleared on May 31, 1979. She testified in receiving the 1978 Stone payment and the 1979 General American payment, both of which have the June 20 date on the check. (Tr. p. 33, lines 14 through 20). Mrs. Reynaud also acknowledged that she “did receive some notification of the payment of the rentals.” (Tr. p. 52, lines 13 and 14). The tort claim of hers has prescribed.
6. Grace Meche Hendrick
Mrs. Hendrick’s payments for delay rentals in 1978 and 1979 were made through the Rayne State Bank and Trust. The 1978 Stone payment was deposited on May 31, 1978 and the 1979 General American payment was deposited on May 24, 1979. She testified that “I realized that there was *501 some discrepancy after we checked with Mr. Edwards to see — I mean what was going on about the lease.” (Tr. p. 11, lines 16 through 18). This meeting with Mr. Nolan Edwards, an attorney, occurred in 1980. She did not recall if she received the Stone delay rental payment (Tr. p. 45, line 23) but did acknowledge money was deposited to her account for the 1978 delay rental. (Tr. p. 44, line 20). The Court holds that Mrs. Hendrick’s tort action has prescribed.
7. Pamela Faye Meche
Through the Guaranty Bank & Trust Co. of Lafayette, Mrs. Meche received the 1978 and 1979 delay rentals. The 1978 payment was deposited to her account on May 31, 1978 and the 1979 payment was deposited May 24, 1979. She stated she became aware there was a dispute “around the middle of May of 1980.” (Tr. p. 6, line 21). Ms. Meche is unable to testify whether she did or did not receive the lower half of the Stone delay rental check. She stated, “If I saw it, I didn’t make any note of this is what it was,” (Tr. p. 21, line 25 through p. 21, line 1) and that “[Ejven if I received them, I don’t remember seeing them.” (Tr. p. 23, line 14). Like the other lessors this Court holds her tort action has prescribed.
Exceptions of prescription are maintained. The reconventional demands of the landowners are dismissed as to Charles C. deGravelle, Raymond Daigle, Thomas E. Barry and the Stone Oil Corporation as to the alleged tort of changing the effective date of the mineral lease.”
For the reasons assigned hereinabove, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.