373 So.2d 204 (1979)
Devril R. WILSON
v.
Edwin HARTZMAN, Al Bossier, Eddie Blanchard, Chuck Starkingburg, Paul Tregre, Charles Calzada, Charles Forrester, Bill Stratton, Dalvin Breaux, Joe Digiovani and John Chantery.
No. 10219.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1979.
Rehearing Denied August 10, 1979.
Writ Refused October 19, 1979.
*205 Larry P. Boudreaux, Thibodaux, for plaintiff-appellant.
Hammett, Leake, Hammett, Hulse & Nelson, Craig R. Nelson, New Orleans, for defendants-appellees.
Lemle, Kelleher, Kohlmeyer & Matthews, Allen R. Fontenot, New Orleans, for third party defendant-appellee, Aetna Casualty & Surety Co.
Christovich & Kearney, William K. Christovich, New Orleans, Bernard, Cassisa, Babst & Saporito, Paul V. Cassisa and B. Frank Davis, Metairie, for defendant-appellee, American Optical Corp.
Ralph S. Johnson, New Orleans, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, James L. Selman, II, New Orleans, for defendant-appellee, Mine Safety Appliance Co.
Drury & Lozes, Felicien P. Lozes, New Orleans, for defendant-appellee, Commercial Union Insurance Co.
Before LEMMON, SCHOTT and GARRISON, JJ.
LEMMON, Judge.
The sole issue raised by plaintiff's appeal is whether his tort suit against his employer's executive officers and the manufacturers of certain safety equipment, seeking recovery for silicosis contracted on the job, was barred by C.C. art. 3536's prescription of one year.

I
Plaintiff, who was employed by Avondale Shipyards, Inc. from 1962 through 1975 in the painting and sandblasting department, testified: In 1968 his physician diagnosed silicosis resulting from exposure to silica dust and advised plaintiff to remove himself from that environment; he discussed the problem with his "superintendents" (he named some of the defendants) and was promised that he would be moved from that department; in 1972, after he underwent hernia surgery, the surgeon noted silicosis on X-rays and recommended to Avondale's safety department that he be removed from the sandblasting operations immediately; he was again assured by several defendants that he would be transferred and continued working on the basis of these assurances; finally, in 1975 his physician found the silicosis had advanced to a point where he was advised to stop working completely, and his last day of work was November 11, 1975.
Plaintiff's original petition, seeking recovery against Avondale's executive officers on the basis that they required him to work under hazardous conditions without furnishing adequate safety devices, was filed on November 12, 1976.[1] By amended petition plaintiff subsequently joined American Optical Corporation and Mine Safety Equipment Company, alleging those defendants had manufactured defectively designed or constructed respiratory equipment and protective hoods which caused plaintiff's industrial disease.
*206 All defendants filed exceptions of prescription. The trial court maintained the exceptions after an evidentiary hearing and dismissed the suit.

II
The only judgment before the court for review is one maintaining an exception of prescription. For purposes of this appeal, therefore, we assume the acts or omissions complained of constituted torts for which plaintiff would be entitled to recovery by timely suit.[2]
C.C. art. 3537 provides that C.C. art. 3536's period of prescription begins to run from the date the damages were sustained. Thus, while prescription as a general rule begins to run from the date of commission of the tort, in those cases in which the damages are not immediately apparent, it has often been held that prescription begins to run from the time a reasonable person under similar circumstances would have become aware of both the tort and the damages. See Stone, Louisiana Civil Law TreatiseTort Doctrine § 120 (1977).
Another exception to commencement of prescription on the date of the tort is the situation in which the tortious conduct that is the operating cause of the damages is a continuing act, giving rise to successive damages from day to day. In such a case prescription does not commence to run until the continuing cause of the damages is abated. Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968); Devoke v. Yazoo & M. V. R. R., 30 So.2d 816 (La.1947); DiCarlo v. Laundry & Dry Cleaning Service, 178 La. 676, 152 So. 327 (1934).
In the Craig case defendant started construction of a building on property adjacent to that of plaintiff's in March, 1963, and the pile driving and other construction activities caused damage to plaintiff's property through April, 1963. The Supreme Court held unanimously that the April 17, 1964 suit was timely to recover all damages caused by the construction activities, even those damages sustained more than a year prior to April 17, because the activity which was the operating cause of the damages was a continuing tort which caused continuing damages.
In the Devoke case the property owners in the area of defendant's roundhouse sought to recover damages from pollutants emitted by the railroad operations. The Supreme Court rejected the defense of prescription as to damages incurred over one year prior to the filing of the suit on the basis that the act which was the operating cause of the damage was continuing. The court further distinguished those cases in which the damage was progressive, but the operating cause "was not a continuous one of daily occurrence".[3]
In the DiCarlo case the vibrations from defendant's laundry plant allegedly caused damage to plaintiff's health and property for a period of three years. Defendant *207 filed an exception of prescription to that part of the claim involving damages incurred more than a year prior to the filing of the suit. The court overruled the exception on the basis that the tort was "of a continuing nature and of daily renewal".
As to the claim against the executive officers in the present case (putting aside considerations of whether a breach of duty caused tortious exposure of plaintiff to hazardous materials and whether recovery is barred by assumption of risk), we note that plaintiff's claim for any damages caused on the last day of work was undoubtedly not prescribed. As to the damages previously caused, the complained-of acts of the executive officers continued daily until plaintiff's last day of work at Avondale. Thus, prescription was suspended (or did not begin to accrue) during the time that the continuing wrongful acts caused plaintiff's continuing exposure, and the prescriptive period began to run only from the time of cessation of the continuing wrongful acts.[4]
We reason that the continuing and repeated wrongful acts are to be regarded as a single wrong which gives rise to and is cognizable in a single action, rather than a series of successive actions. Therefore, the date for commencing the accrual of prescription of an action based on the single wrong is the date of the last wrongful exposure, and the single action may be filed within the prescriptive period reckoning from the cessation of the continuing wrongful acts. See 51 Am.Jur.2d, Limitation of Actions, § 137 (1970).
Accordingly, the suit against the executive officers, filed within one year of the cessation of the continuing wrongful acts on plaintiff's last day of work, was timely, and the exception should have been overruled.[5]

III
The continuing tort doctrine does not apply to the defendants who are manufacturers. However, the duty of the executive officers to provide adequate safety devices was a non-delegable duty, and if it is proved at a trial on the merits that the safety devices were defectively designed or manufactured, then the executive officers will be solidarily liable with the manufacturers. Accordingly, since the timely suit against the executive officers interrupted prescription under C.C. art. 3552 against any solidary debtor, the manufacturer's exception of prescription cannot be determined until the determination of the issue of solidary liability at the trial on the merits.
For these reasons the judgment of the trial court is reversed, and it is now ordered that the exceptions of prescription be overruled and the case remanded for further proceedings.
REVERSED AND RENDERED, REMANDED.
NOTES
[1] November 11, 1976 was a legal holiday.
[2] Thus, we do not reach the very interesting questions of whether the executive officers owed a duty not to expose (or continue to expose) plaintiff to the deleterious environment and whether plaintiff consented to and assumed the risk of such exposure, which perhaps was a danger inherent in the occupation.
[3] Spyker v. International Paper Co., 173 La. 580, 138 So. 109 (La.1931); Young v. International Paper Co., 179 La. 803, 155 So. 231 (1934); and Parro v. Fifteen Oil Co., 26 So.2d 30 (La.App. 1st Cir. 1946).

Recently, this court declined to find a continuing tort after defendants had completed an excavation across plaintiff's property, although the damage continued to exist for 17 years after the dredging operations were completed. Noting that a continuing tort is one in which the damage-causing act continues over a period of time, the court held that no additional causes of action accrued after the damage-causing act was abated, even though the damage continued to exist and even progressively worsened. Derbofen v. T. L. James & Co., Inc., 355 So.2d 963 (La.App. 4th Cir. 1977), cert. den. 357 So.2d 1156, 1168 (La.).
See also the general discussion of prescription in Dean v. Hercules, Inc., 328 So.2d 69 (La.1978), which held that the prescriptive period in an action for damages under C.C. art. 667 is one year and remanded the case to the trial court for a determination of whether the plaintiff exercised reasonable diligence in ascertaining the existence of facts which would entitle him to bring suit for orchard damages allegedly caused by plant emissions in 1970 and 1971, since suit was not filed until 1974.
[4] See discussion in AnnotationWhen Limitation Period Begins to Run against Cause of Action or Claim for Contracting of Disease, 11 A.L.R.2d 277, § 5 (1958).
[5] This decision is not in conflict with Edwards v. Hartzman, 362 So.2d 1188 (La.App. 4th Cir. 1978). The continuing tort argument was not presented in the Edwards case. Significantly, the argument could not have been presented under the facts (as recited in defendants' brief filed in this court), since plaintiff had terminated work at Avondale three years before suit was filed.

This decision also does not reach the argument that prescription begins to run on the date the condition becomes disabling.