740 So.2d 183 (1999)
Florianna WILLIAMS, et al.
v.
LAFAYETTE INSURANCE CO., et al.
No. 98-CA-2855.
Court of Appeal of Louisiana, Fourth Circuit.
May 19, 1999.
Rehearing Denied September 15, 1999.
*184 Christopher J. Bruno, Janine C. Williams, New Orleans, Louisiana, Attorneys for Plaintiffs-Appellants Florianna Williams, et al.
Geoffrey H. Longenecker, Longenecker & Associates, Ltd., Madisonville, Louisiana, Attorney for Defendants-Appellees Lafayette Insurance Co., et al.
Court composed of Chief Judge ROBERT J. KLEES, Judge JOAN BERNARD ARMSTRONG, Judge MIRIAM G. WALTZER.
KLEES, Chief Judge.
On March 13, 1995, plaintiff, Florianna Williams ("Williams"), individually and on behalf of her minor child, filed suit against Rosa Shambra, the lessor, and her insurer, Lafayette Company. Williams alleges that her minor child, Carey Williams, suffered lead poisoning caused from eating leadbased peeling paint in their apartment. On March 26, 1998, the plaintiffs filed a Supplemental and Amended petition adding Soniat Realty, Inc. as a new defendant. On September 4, 1998, the trial court dismissed the suit on grounds of prescription. For the reasons below, we reverse.
Carey Williams "Carey" was born on January 18, 1993. At the time of his birth, his mother, Williams, was renting an apartment located at 1509 Governor Nichols Street in New Orleans.
Carey received his first blood lead level test on September 30, 1993. The test reflected a blood lead level of 10.0. Plaintiffs allege that this test performed on September 30, 1993 was Carey's "Last Negative Test".[1] The defendants argue that the September 30, 1993 test resulted in a "Positive Assessment" for "Lead Risk". Further, at the hearing, the defendants argued that the medical record of September 30, 1993 states that Williams informed the nurse that she had "peeling paint outside." However, the defendants failed to submit this evidence into the record and we are unable to find any indication that Williams made this comment or was aware of peeling paint on her house.
Plaintiffs allege that Carey first tested positive for blood lead toxicity on April 18, 1994. The test revealed his blood lead level to be 27.5. At that time, Carey was referred to the Outreach program and a nurse visited the family's home to give them the test results. However, at the hearing, defendants introduced as evidence a progress report from Charity Hospital stating that a January 1994 test indicated that Carey had a lead poisoning level reading of 37.
In September of 1994, Carey's blood lead level test reflected a blood level of 61.8. In November of 1994, the Williams' home was inspected for lead contaminants. Subsequently, in December of 1994, the Department of Health notified Williams that her home contained surfaces with excessive lead content with the greatest concern being the surfaces with flaking or peeling paint. Plaintiffs filed suit against *185 the defendants on March 13, 1995three months after receiving the notice from the Department of Health that her home contained lead contaminants.
The only issue before this court is whether plaintiffs' claims against defendants were properly dismissed as prescribed. Plaintiffs allege that they timely filed a petition against the defendants since they did not learn until the first positive test in April 18, 1994, that Carey had suffered damages from lead poisoning. Alternatively, plaintiffs argue that the doctrine of "contra non valentem" should suspend prescription because they were not notified that the apartment contained excessive paint until December 19, 1994.
In Louisiana, delictual actions are subject to a liberative prescription of one year, commencing to run from the day injury or damage is sustained. La. C.C. art. 3492. Statutes governing prescription are strictly construed against prescription, and in favor of the obligation sought to be extinguished. Babkow v. Morris Bart, P.L.C., 98-0256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423. "With two possible constructions, the one that favors maintaining, as opposed to barring, an action should be adopted." Id. citing Bustamento v. Tucker, 607 So.2d 532 (La.1992). Nonetheless, under the doctrine of contra non valentem, prescription may be suspended during the period in which the cause of action was not known by or reasonably knowable by the plaintiff. La Plaque Corporation v. Chevron U.S.A., Inc., 93-1597 (La.App. 4 Cir. 5/26/94), 638 So.2d 354, 356, writ denied, 94-2125 (La.11/11/94); 644 So.2d 395. Prescription is usually suspended under the doctrine of contra non valentem when the circumstances of the case fit within one of the following four categories: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant. Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211, rehearing denied (5/12/94). Although the first three categories are clearly not relevant to this case, the fourth category, commonly referred to as the discovery rule, is relevant. It provides that prescription does not run against a party ignorant of his rights provided that ignorance is not willful, negligent or unreasonable. Id. Applying these principles here, we find that plaintiffs have demonstrated why their claims against defendants have not prescribed.
First, we find that defendants progress report from Charity Hospital, stating that Carey was tested in January of 1994, is unconvincing to prove the Exception of Prescription. The medical document is merely a history of Carey's medical care documented by a nurse. Further, the defendants failed to submit any evidence from The Katherine Benson Health Center that Carey in fact received a blood test in January of 1994. More convincing to this court is plaintiffs' medical report, stating that Carey's last negative test was September 30, 1993, and his first positive test was April 18, 1994, because the record indicates that Carey did in fact receive blood tests at The Katherine Benson Health Center on these dates. Accordingly, using the April 18, 1994 test date, we find that plaintiffs filed this lawsuit within the prescriptive period.
Second, the defendants rely upon Logan v. Housing Authority of New Orleans to state that prescription begins to run when the plaintiff "first tested positive for blood lead." 538 So.2d 1033 (La.App. 4 Cir. 1/30/89). However, we find the facts of this case distinguishable from the facts in Logan.
In Logan, the plaintiffs first tested positive for blood lead in September of 1981. The plaintiffs' apartment was tested for *186 lead on September 17, 1981, the same month the child was tested positive for blood lead. Id. Additionally, in September of 1981, a letter was sent to the plaintiffs informing them that their son had high blood lead. Id. The letter also provided instructions on temporary measures to protect the child from further exposure. Accordingly, in Logan, the parents were on notice of both the lead poisoning and the source of the lead poisoning over two years before they filed the suit. The parents were merely alleging that they did not realize the damages until two years following the lead poisoning.
However, in this case, Williams was never notified of the source of the lead contamination until she received the letter from the Department of Health on December 19, 1994. Thus, even if Williams knew of her son's lead poisoning as early as September 30, 1983, we find that under the doctrine of contra non valentem, prescription was suspended until plaintiffs knew that the peeling paint in the home was the source of the lead poisoning.
Accordingly, we reverse the decision of the trial court granting the Exception of Prescription and reinstate plaintiffs' claims against defendants.
REVERSED.
NOTES
[1] At trial, plaintiffs submitted into evidence an Outreach medical record which revealed that the September 30, 1993 test was Carey's "Last Negative Test".