848 So.2d 135 (2003)
Bryon P. COULON, Sr. and Mary C. Coulon
v.
WITCO CORPORATION, Witco Chemical Corporation, Argus Chemical Corporation, Bacharach, Inc., Walk, Haydel and Associates, Inc., Gulf Environmental Service & Technology, Inc., and Corporate Health Resources, Inc.
No. 03-CA-208.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 2003.
Robert E. Kleinpeter, Jay G. McMains, Kleinpeter & Schwartzberg, Baton Rouge, LA, for plaintiffs-appellees.
S. Gene Fendler, Carol W. Reisman, Michael A. Golemi, Liskow & Lewis, New Orleans, LA, for defendant-appellant, Crompton Corporation.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
Byron Coulon ("Coulon") is a former employee of Witco Corporation ("Witco"), now known as Crompton Corporation ("Crompton"). Coulon worked for Witco as a chemical operator at the plant in Taft, Louisiana from 1978 to 1999. In September 1999, Coulon and his wife, Mary Coulon, filed suit against Witco, now known as Crompton, and other defendants alleging *136 Coulon was exposed to significant amounts of neurotoxins and several carcinogens while working in the Haley Unit at the Taft plant. He alleges that, as a result of the exposure, he suffered permanent neurological injuries.
Crompton answered the Coulons' Petition and filed an Exception of Prescription. Crompton argued that Coulon knew or should have known of the causal relationship between his alleged exposure and alleged medical condition more than one year before he filed suit. Crompton produced Coulon's deposition and medical reports to demonstrate that Coulon knew of his medical problems and exposure. Crompton further argued that prescription had not been interrupted as the Coulons argued it had. Crompton filed a Rule to Show Cause why the exception should not be granted. In response, the Coulons filed a Motion to Quash the Rule to Show Cause. The Coulons argued that the exception of prescription involved questions of fact and credibility determinations concerning the application of the contra non valentum theory which must be tried by a jury. The Coulons did agree that the question of whether this matter involved a continuous tort was a question of law, which could be heard by the Court. The Coulons filed a Motion for Partial Summary Judgment seeking to have the trial court overrule the exception of prescription based on the theory of continuing tort.
In support of their motion for partial summary judgment, the Coulons argued that a continuing tort exists where a defendant's damaging conduct is of a continuing nature and gives rise to successive damages such that prescription does not begin to run until the day of the last harmful act. The Coulons contend that the day of the last harmful act was Coulon's last day of employment with Crompton. Since they have alleged a continuing tort of toxic exposure, which didn't stop until Coulon's last day of work, the Coulons contend they timely filed their petition within four months after the last exposure.
In opposition to the Coulon's motion for partial summary judgment, Crompton argued that factual issues remained as to whether Coulon was continuously exposed to harmful substances and whether Coulon's injuries were caused by toxic exposure during his employment. Thus, Crompton argued the Coulons' continuous tort defense should be referred to the merits at trial. In addition, Crompton argued that the continuous tort doctrine does not suspend the running of prescription where a plaintiff knows or should know of possible injuries and their cause prior to a defendant stopping the continuous wrongful conduct. Therefore, Crompton argued that once the Coulons were aware that Coulon was being exposed to dangerous levels of toxic substances, prescription started running, regardless of his last day of exposure at work.
Following a hearing on the motion for partial summary judgment, the trial court agreed with the Coulons and relied on Wilson v. Hartzman, 373 So.2d 204 (La. App. 4th Cir.1979). In Wilson, the plaintiff claimed he was exposed to toxic substances on a daily basis up until his final day on the job. The Court focused on the end of the alleged conduct, or the plaintiff's last day of work, as the date prescription began to run. Therefore, the Court held that the continuing tort doctrine suspended the running of prescription.
The trial court in this matter found that the disputed factual issues alleged by Crompton did not preclude a partial summary judgment because they have more to do with the actual merits of the lawsuit than with the issue of prescription. The trial court applied the continuous tort doctrine and found that since the Coulons *137 filed their petition within four months of Coulon's last day of alleged exposure, the petition was timely filed. As a result, the trial court granted the partial summary judgment in favor of the Coulons.
Crompton now appeals the granting of the partial summary judgment alleging four assignments of error. First, Crompton argues that the trial court erred in failing to apply the proper standards governing summary judgments under Louisiana Code of Civil Procedure article 966. Second, Crompton argues that the trial court erred in determining that the questions of fact raised by Crompton were not "material" to the prescription issue. Third, Crompton argues that the trial court erred in failing to recognize that prescription on a continuing tort cause of action begins to run at the time the plaintiffs knew or should have known of their injuries rather than from the last day of alleged tortuous conduct. And finally, Crompton argues that the trial court erred in ruling that the Coulons timely filed suit under the continuing tort doctrine, thus defeating Crompton's exception of prescription because suit was filed within four months of the last alleged exposure.
For the reasons which follow, we agree with the trial court's finding that the Coulon's timely filed their petition based on the continuous tort doctrine and we affirm the trial court's granting of partial summary judgment in favor of the Coulons.
A continuing tort exists where a defendant's damaging conduct is a continuing act and gives rise to successive damages from day to day. Wilson v. Hartzman, supra. As a result, prescription does not commence to run until the continuing cause of the damage stops. Id.
During his employment, Coulon was regularly exposed to potentially harmful chemicals. As part of a normal shift operation, which occurred six times a shift, he would perform sampling tests which exposed him to hydrogen sulfide. Hydrogen sulfide is one of the chemicals Coulon alleges was harmful to him and caused him injury. In addition, Coulon was exposed to carbon disulfide while performing routine unloading of railroad tank cars without respiratory protection. Carbon disulfide is another chemical Coulon alleges was harmful to him. These procedures performed by Coulon were done on a regular basis. They were not one-time events and Coulon was exposed to these chemicals every time he performed one of those procedures.
Coulon also testified in his deposition that he would perform a smell test when he would sample the TGA reactor. He indicated it smelled like rotten eggs and he would get nauseated and his eyes would be irritated. He also testified that he was told in training that if the chemical was in low concentrations, then it smells like rotten eggs. If it was in high concentrations, then you could not smell it. He was also told that in high concentrations it could "knock you down", but if you woke up then you were alright. He was also told that it was the people who didn't wake up that eventually died, but if you woke up then you had it made. Coulon also testified that he was not told that he could have effects from the exposure later if there was a one time incident of exposure or if he was repeatedly exposed to low concentrations.
Based on this testimony, we find that Coulon was regularly exposed to potentially harmful chemicals. Therefore, Crompton's conduct was continuous and we find the continuous tort doctrine applies in this case.
Crompton also argues that the continuous tort doctrine does not suspend prescription, pursuant to the theory of contra *138 non, when the plaintiff has knowledge of his injury and its possible cause prior to the last day of exposure. We agree with the trial court and find that the theories of contra non, or the discover rule, and continuing tort are distinct and separate. The continuous tort doctrine has no element of knowledge by the plaintiff to consider in order to decide when prescription will begin to run. The Fourth Circuit addressed this issue in Wilson v. Hartzman, supra. In Wilson, the court stated the following:
C.C. art. 3537 provides that C.C. art. 3536's period of prescription begins to run from the date the damages were sustained. Thus, while prescription as a general rule begins to run from the date of commission of the tort, in those cases in which the damages are not immediately apparent, it has often been held that prescription begins to run from the time a reasonable person under similar circumstances would have become aware of both the tort and the damages. See Stone, Louisiana Civil Law Treatise Tort Doctrine s 120 (1977).
Another exception to commencement of prescription on the date of the tort is the situation in which the tortious conduct that is the operating cause of the damages is a continuing act, giving rise to successive damages from day to day. In such a case prescription does not commence to run until the continuing cause of the damages is abated. Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968); Devoke v. Yazoo & M.V.R.R., 211 La. 729, 30 So.2d 816 (La.1947); DiCarlo v. Laundry & Dry Cleaning Service, 178 La. 676, 152 So. 327 (1934).
We agree with the trial court and find that regardless of Coulon's knowledge of his possible injuries or the possible cause, the alleged tortious conduct was continuous and gave rise to damages from day to day. Therefore, prescription did not begin to run until the alleged cause of the damages was abated, or the last day of Coulon's employment, which was the last day he was exposed to the potentially harmful chemicals. He filed suit four months after that date. Therefore, we find the petition for damages was timely filed.
On appeal, Crompton also argues that Coulon's medical conditions were not caused by the alleged chemical exposures. We will not address this issue. Causation is not relevant to the issue of whether there was an alleged continuous tort and it is an issue for a trial.
In accordance with the above, we affirm the trial court's granting of partial summary judgment in favor of the Coulons, which overrules Crompton's exception of prescription.
AFFIRMED.