MURRAY. Judge.
[, Plaintiffs, Quintilla Risin, individually and on behalf of her minor child, Daisha Risin, appeal the trial court’s judgment granting an exception of prescription in favor of the defendant, D.N.C. Investments, L.L.C [“D.N.C.”]. For the reasons that follow, we reverse and remand.
PROCEDURAL BACKGROUND
On February 19, 2004, plaintiffs filed suit against their landlord, D.N.C., alleging that Daisha contracted lead poisoning from exposure to lead paint while the plaintiffs were living in a duplex at 3129 Marais Street in New Orleans. D.N.C. is the owner of the duplex, where plaintiffs resided from June 1999 until April 2004.
D.N.C filed an exception of prescription, asserting that Daisha was first diagnosed with lead poisoning in 2002, and Ms. Risin first received notice that the paint in the residence had tested positive for lead on January 13, 2003 in a letter from the City of New Orleans’ Lead Prevention Program. Because the suit was filed more than one year after the plaintiffs were put on notice as to the probable source of Daisha’s lead poisoning, D.N.C. maintained that the suit was prescribed.
Following a hearing, the trial court granted D.N.C.’s exception and dismissed the suit. The trial court denied the plaintiffs’ motion for new trial, and this appeal followed.
li>,On appeal, the plaintiffs assert that the trial court erred by refusing to apply the continuing tort doctrine to this case. Under that doctrine, where the tortious activity is continuous, prescription does not begin to accrue until the date of the last wrongful exposure (in this case, the date in April, 2004, when the plaintiffs moved from the residence). See Wilson v. Hartzman, 373 So.2d 204 (LaApp. 4 Cir.1979). We agree that considering the facts of the *135 instant case, the trial court erred by not concluding that D.N.C.’s continuous failure to remediate the problem, which resulted in Daisha’s continued exposure to lead every day she lived at the residence, constituted a continuing tort.
FACTS
In support of their contention that the continuing tort exception should be applied to defeat prescription in the instant case, the plaintiffs set forth a timeline of facts, the following of which are supported by the record:[1]
October lk, 2002: Daisha is diagnosed with lead poisoning while residing at 3129 Marais Street.
December 11, 2002: Daisha is re-tested and her blood lead level is still elevated.[2]
January 13, 2003: The City of New Orleans, Department of Health inspects the property and finds the interior paint positive for lead. A compliance order is issued to the property owner, D.Ñ.C., for the abatement of the lead.
February 28, 2003: The City of New Orleans determines that D.N.C. has complied with the abatement order and that the property is no longer contaminated.
June 25, 2003: Daisha is re-tested, and her blood lead level, although lower than it was on December 11, 2002, is still above normal.[3]
February 19, 200k: The plaintiffs file suit.
1 JVLarch 16, 200k: Additional paint samples are taken from the residence and analyzed by Analysis Laboratories, Inc. According to the affidavit of John Olea-ga, these samples test positive for lead.
April, 200k: The plaintiffs move from the residence.
August 5, 200k: Steve Calonje, Certified Hazardous Risk Assessor with CALCO Hazardous Lead Inspectors, performs additional testing on the property. Mr. Calonje later states in his affidavit that on this date, extremely high levels of hazardous lead-based paint were found on both the interior and exterior surfaces of the site. He further concludes: “Regardless of any report by a city inspection official, at the time of inspection this residence clearly had not been remediated, so as to remove the lead paint and/or dust from being easily accessible to small children.”
In addition, the plaintiffs rely upon the affidavit of Dr. John Rosen,[4] which they submitted to the trial court in opposition to the defendant’s exception. Dr. Rosen opined that: “... Daisha Risin was continuously exposed to bioavailable lead, and suffered continuous and continuing damage from that lead, during the entire time she resided at the property located at 3129 Marais Street, New Orleans, Louisiana.”
LAW AND ANALYSIS
Generally, Louisiana jurisprudence requires that courts strictly construe prescriptive statutes against finding that the case has prescribed and in favor of maintaining the cause of action. Lima v. *136 Schmidt, 595 So.2d 624, 629 (La.1992); Cichirillo v. Avondale Industries, 04-0131 (La.App. 4 Cir. 10/27/04), 888 So.2d 947, 950. Therefore, when a case is subject to two possible constructions, the court should adopt that construction which favors maintaining, rather than barring, the action. Id.
|4The prescriptive period for del-ictual actions is one year, which commences to run from the day injury or damage is sustained. La. C.C. art. 3492. One of the exceptions to this rule is the jurisprudentially recognized doctrine of continuing tort. The continuing tort exception only applies when continuous conduct causes continuing damages. Bustamento v. Tucker, 607 So.2d 532, 542 (La.1992). Where the cause of the injury is a continuous one giving rise to successive damages, prescription does not begin to run until the conduct causing the damage is abated. South Central Bell Telephone Co. v. Texaco Inc., 418 So.2d 531, 533 (La.1982).
In Bustamento, an action for intentional infliction of emotional distress resulting from sexual harassment, the Louisiana Supreme Court held that the one-year prescriptive period did not commence until the last act occurred or the conduct abated. Bustamento at p. 542. The Bustamento court found the doctrine of continuing tort applicable because the acts or conduct were continuous, were perpetrated by the same actor, were of the same nature, and the conduct became tortious by virtue of its continuous, cumulative, and synergistic nature. Id.
The issue in the instant appeal is whether the doctrine of continuing tort applies in cases of lead poisoning from exposure to contaminated paint. We have found no Louisiana jurisprudence addressing this precise issue.
In support of the trial court’s judgment, D.N.C. cites Logan v. Housing Authority of New Orleans, 538 So.2d 1033 (La.App. 4 Cir.1989), which also involved a child who developed lead poisoning from exposure to contaminated paint. In Logan, the child’s family, living in the St. Thomas Housing Project in New Orleans, sued HANO[5]. The plaintiffs contended that although they had | ¡¡received a letter on September 23, 1981 from the Lead Poisoning Prevention Program informing them that their child’s blood had tested positive for lead due to the existence of contaminated paint in the apartment, they did not realize any damages had been done until the child “was found to be suffering from lead poisoning on July 11, 1983.” Suit was subsequently filed May 21, 1984. The district court dismissed the case as having prescribed, and the sole issue on appeal was whether the trial court had erred by finding that the plaintiffs actually discovered the injury more than one year prior to filing suit. This court affirmed the trial court, noting that: “The trial court’s finding that a plaintiff is “aware” of his or her injury on a particular date must be accorded great weight and should not be disturbed unless clearly erroneous.” Id. at 1034. Without significant discussion of the facts, this court concluded that the trial court did not commit manifest error because there was “clearly a body of evidence from which the trial court could have based its conclusion that the appellants were aware of their child’s condition long before May of 1983....” Id.
Although Logan involved a factual situation similar to the instant case, the Logan *137 court never considered whether the continuing tort exception could be applied; instead, the discussion was limited to when the plaintiffs discovered the injury. Therefore, that case’s precedential value on the issue of whether exposure to lead paint is a continuing tort is questionable.
In support of their argument that the continuing tort exception should be applied herein, plaintiffs cite Wilson v. Hartzman, 373 So.2d 204 (La.App. 4th Cir.1979). In Wilson, the plaintiff, a shipyard employee, was diagnosed in 1968 with silicosis resulting from his inhalation of toxic particles at his job. He discussed the problem with his employers and was assured that he would be moved to a less hazardous position, but never was. Seven years later, his health had deteriorated so | fibadly that he had to quit his job. A few months after quitting, Mr. Wilson filed suit against the executive officers of his former corporate employer and the manufacturers of certain safety equipment. All the defendants filed exceptions of prescription, claiming that the prescriptive period had begun to run as soon as the plaintiff was informed of his illness. The trial court maintained the exceptions. This court reversed, holding that Mr. Wilson’s exposure to toxic silica dust was a continuing tort, and thus prescription did not begin to run until the last day of Mr. Wilson’s employment. Writing for this court, Justice (then Judge) Lem-mon reasoned:
[T]he continuing and repeated wrongful acts are to be regarded as a single wrong which gives rise to and is cognizable in a single action, rather than a series of successive actions. Therefore, the date for commencing the accrual of prescription of an action based on the single wrong is the date of the last wrongful exposure, and the single action may be filed within the prescriptive period reckoning from the cessation of the continuing wrongful acts.
Id., 373 So.2d. at 207.
Moreover, this court in Wilson clearly recognized the distinction between the discovery rule and the continuing tort doctrine. More specifically, the court stated:
... while prescription as a general rule begins to run from the date of commission of the tort, in those cases in which the damages are not immediately apparent, it has often been held that prescription begins to run from the time a reasonable person under similar circumstances would have become aware of both the tort and the damages. See Stone, Louisiana Civil Law Treatise Tort Doctrine § 120 (1977).
Another exception to commencement of prescription on the date of the tort is the situation in which the tortious conduct that is the operating cause of the damages is a continuing act, giving rise to successive damages from day to day. In such a case prescription does not commence to run until the continuing cause of the damages is abated.
Id., 373 So.2d at 206 (citations omitted).
The Louisiana Supreme Court applied the continuing tort exception in South Central Bell Telephone Co. v. Texaco, 418 So.2d 531 (La.1982). In that case, a |7nearby gas station was leaking gasoline onto telephone lines. The Court ruled that prescription began to run when the leaky gas tanks were replaced, not when the plaintiff discovered the damage. Echoing this court’s opinion in Wilson, the Supreme Court stated, ‘When the tortious conduct and resulting damages continue, prescription does not begin to run until the conduct causing the damages has abated.” South Central Bell at 533.
Moreover, as explained by the Fifth Circuit Court of Appeal in Coulon v. *138 Witco Corporation, 2003-0208 (La.App. 5 Cir. 5/28/03), 848 So.2d 135, 138, the time when a plaintiff acquires knowledge of the damages has no relevance to the continuing tort doctrine. In Coulon, the plaintiff worked for his former employer, Witco Corporation, from 1978 until 1999. In 1999, the plaintiff filed suit against Witco alleging permanent neurological injuries as a result of continuous exposure to significant amounts of neurotoxins and carcinogens in the workplace. Witco filed an exception of prescription arguing that the continuous tort doctrine does not suspend the running of prescription where a plaintiff knows or should know of possible injuries and their cause prior to the defendant stopping the alleged continuous wrongful conduct. Therefore, Witco argued that once the plaintiff was aware that he was being exposed to dangerous levels of toxic substances, prescription started running, regardless of his last day of exposure at work. The trial court rejected this argument and held that the action was timely filed based on the continuous tort doctrine. The Fifth Circuit affirmed, stating that “the theories of contra non [valentum], or the discover rule [sic], and continuing tort are distinct and separate. The continuous tort doctrine has no element of knowledge by the plaintiff to consider in order to decide when prescription will begin to run.” Coulon, p. 6, 848 So.2d at 138. Therefore, the court concluded: “regardless of Coulon’s knowledge of his possible injuries or the possible cause, the alleged latortious conduct was continuous and gave rise to damages from day to day. Id, pp. 6-7, 848 So.2d at 138.
In the instant case, we find that the tortious conduct was continuous. Despite the finding by the City on February 28, 2003, that the landlord had complied with the abeyance order, a later assessment made August 4, 2004 (four months after the plaintiffs moved from the property, and six months after the plaintiffs filed suit) concluded that the premises were still seriously contaminated with lead. The defendant’s fault, failing to abate the lead exposure, was not a one time event which the plaintiffs learned of on October 14, 2002. The defendant’s fault continued until the plaintiffs’ exposure to lead paint ended, in this case in April, 2004, when the plaintiffs moved out.
We do note that the scope of application of continuing tort is limited. Both conduct and damage must be continuous. Here the “conduct” was continuous, despite the fact that the conduct complained of was not action, but the failure to act (to correct the problem) by one who has a duty to do so. In the instant case, the landlord had a duty to provide its tenant with safe housing (as evidenced by the City’s abatement order directed to the D.N.C.). Obviously, the landlord / owner also had not only the right,[6] but also the primary responsibility to take the steps necessary to remove or otherwise ameliorate the toxic lead paint in the house. The results of Daisha’s blood tests submitted by the plaintiffs clearly show that even after D.N.C. had supposedly corrected the situation, Daisha still had abnormally high amounts of lead in her blood.[7] Under *139 these circumstances, construing the facts in the light most favorable to the plaintiffs, we must conclude that D.N.C.’s | failure to act caused Daisha to continue to be exposed to lead every day she remained in the apartment.[8]
CONCLUSION
We find that the instant case presents a continuing tort, and therefore prescription did not begin to run until the child’s exposure to lead ceased, which was clearly less than one year prior to the filing of suit. Accordingly, the trial court erred by dismissing the case on the basis of prescription. The judgment of the trial court is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TOBIAS, J., Concurs and Assigns Reasons.

. These facts are confirmed by exhibits submitted to the trial court on trial of the exception.

. The results of this test showed Daisha’s blood lead level to be 17. D.N.C. concedes in its appellate brief that a level of 10 or above in a child is abnormal. The plaintiffs argue that any measurable trace of lead in a child’s blood is abnormal.

. According to Daisha's medical records, on this date her blood lead level was 10.

. Dr. Rosen, a professor of pediatrics at Mon-tefiore Medical Center in New York City, rendered his opinion after reviewing Daisha’s health records and inspection reports conducted on the property in question.

. HANO is an acronym for the Housing Authority of New Orleans, which was the plaintiffs' landlord in Logan.

. Whether the landlord had the sole right to alter the paint is not revealed by the evidence presented on the trial of the exception.

. Even the defendant concedes that a blood lead level of 10 or higher is considered abnormal. The evidence showed that on January 17, 2003, Daisha's level was 17; on March 12, 2003 (after the City's February 28 inspection had shown that D.N.C. had complied with the abatement order), Daisha’s level had dropped to 8; however, on June 25, 2003 (eight months before suit was filed), Daisha's blood lead level had gone back up to 10.

. Cf: Housing Authority of New Orleans v. Standard Paint and Varnish Co., 612 So.2d 916 (La.App. 4 Cir.1993), in which this court declined to apply the continuing tort exception where the defendant, the paint manufacturer, did not have a continuing duty to provide a safe environment to the plaintiff, HANO. In that case, this court found that the selling of the paint to HANO was a one-time event, and did not constitute ongoing tortuous conduct.