999 So.2d 83 (2008)
Latoya WILHIKE, Individually and on Behalf of the Minor Child, Ronald Wilhike
v.
Franklin D. POLK, Elizabeth S. Polk and ABC Insurance Company.
No. 2008-CA-0379.
Court of Appeal of Louisiana, Fourth Circuit.
November 19, 2008.
Jennifer N. Willis, Willis & Buckley, APC, New Orleans, LA, for Plaintiff/Appellant.
*84 Ike Spears, Tammy M. Stewart, Spears & Spears, New Orleans, LA, for Franklin D. Polk And Elizabeth S. Polk.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III).
PATRICIA RIVET MURRAY, Judge.
Plaintiff, Latoya Wilhike, appeals the trial court's judgment dismissing her suit on the basis of prescription. For the reasons that follow, we affirm.
Latoya Wilhike filed the instant suit on August 23, 2007 alleging that her minor son, Ronald, was exposed to toxic lead while living at 2220 Bienville Street, a rental property owned by defendants Franklin and Elizabeth Polk.[1] The petition alleged that the defendants/owners of 2220 Bienville knew, or had reason to know, of the presence of lead-based paint at that residence during the time Latoya and Ronald Wilhike lived there, but that Ms. Wilhike was unaware of the source of her son's lead poisoning until October, 2006.[2]
According to the records of the New Orleans Childhood Lead Poisoning Prevention Program ["LPPP"], which are attached to plaintiff's petition, Latoya Wilhike was advised of her son's lead toxicity and the need for additional blood testing on November 13, 2003. The same records indicate that the LPPP attempted on February 17, 2004 to test the child's residence, but the housing complex was "all boarded up". The LPPP records show three different addresses for Ronald Wilhike: 1227 S. Johnson, 2220 Bienville, and 14101 Curran Road on 7/27/05[3]. Ronald's lead blood level was retested on February 20, 2004, and again on July 27, 2005, and was found to be within the normal range on each occasion.
Defendants asserted an exception of prescription, which was heard by the trial court on December 14, 2007. By written judgment rendered January 4, 2008, the trial court granted defendants' exception and dismissed plaintiff's claims. The court did not issue written reasons for judgment.
On appeal, plaintiff argues that the trial court erred by maintaining the exception. Relying upon this court's opinion in Williams v. Lafayette Ins. Co., 98-2855 (La.App. 4 Cir. 5/19/99), 740 So.2d 183, plaintiff argues that under the principle of conta non valentum, the one-year tort prescription did not begin to run until October 4, 2006, the first point at which she was aware of both her son's lead poisoning and its likely source. She therefore contends that her August 23, 2007 suit was timely filed. We disagree.
*85 Louisiana Civil Code article 3492 provides that delictual actions are subject to a liberative prescription of one year, which commences to run from the date the injury or damage is sustained. Under the judicially-created exception of contra non valentum, as articulated by this court in Williams v. Lafayette Ins. Co., supra, the running of prescription is suspended when certain factual circumstances exist, one of which is when the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance has not been induced by the defendant. Id. at p. 3, 740 So.2d at 185 (citing Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211, rehearing denied 5/12/94). Plaintiff herein argues that her case fits into this category, which is commonly known as the "discovery rule." Id.
However, Williams v. Lafayette does not support plaintiff's argument, as the facts in the instant case are not analogous to those in Williams. In Williams the plaintiff alleged that her child first tested positive for lead poisoning on April 18, 1994, submitting as evidence a test done at The Katherine Benson Health Center. Following a second blood test at the same facility in September of 1994 which showed a higher lead level, the child's home was tested in November, and his mother received a letter in December, 1994 confirming that her residence was contaminated. She filed suit on March 13, 1995, within one year of the child's first positive blood test.
The defendants, who disputed the date upon which the plaintiff learned that her son's blood showed elevated levels of lead, filed an exception of prescription. In support of the exception the defendants produced a Charity Hospital progress report reflecting that the child's blood was positive for lead poisoning in January, 1994. The trial court maintained the exception of prescription. This court found that the Charity Hospital progress report was "unconvincing" because it was merely a history of the child's medical care as documented by a nurse while the medical records from the Katherine Benson Health Center reflected that the child's last negative blood test was on September 30, 1993, and his first positive test was on April 18, 1994. In light of that evidence, this court held that the March, 1995 suit, filed within one year of the date of the first positive blood test, was timely. Williams v. Lafayette, supra, p. 4, 740 So.2d at 185.
The Williams court further stated that, even if the plaintiff had become aware of her son's positive lead level before the April, 1994 test, under the doctrine of contra non valentum, the running of prescription would have been suspended until December 19, 1994 when the plaintiff was notified by the Department of Health that her apartment was lead contaminated. Id., p. 5, 740 So.2d at 186. However, in light of the court's finding that the plaintiff did not become aware of her son's lead poisoning on April 18, 1994, less than one year before the filing of suit, the Williams court's statement regarding the application of contra non valentum is dicta.
In the instant case, there is no dispute about when the plaintiff first became aware of her child's lead poisoning, as the record reflects that Latoya Wilhike was advised in November, 2003 that Ronald's blood had tested positive for lead. Plaintiff's petition gives the date of Ronald's diagnosis as October 24, 2003. As her suit was not filed until August, 2007, the petition is prescribed on its face. Under Louisiana law, when a defendant raising the exception of prescription shows that the petition is prescribed on its face, the plaintiff bears the burden of proving the prescriptive period has been suspended, interrupted or renounced. Grant v. *86 Tulane University, 02-0848, p. 3 (La. App. 4 Cir. 4/23/03), 853 So.2d 651, 653 (citing Lima v. Schmidt, 595 So.2d 624 (La.1992)). To avoid the running of prescription under the doctrine of contra non valentum, the plaintiff must show not only that he did not know facts upon which to base his claim, but also that he did not have reason to know or discover such facts and that his lack of knowledge was not attributable to his own neglect. Hospital Service District No. 1 of Jefferson Parish v. Alas, 94-897, p. 9 (La.App. 5 Cir. 6/28/95), 657 So.2d 1378, 1383 (citing Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La. 1979)). As this court has repeatedly held, prescription begins to run when the plaintiff has "constructive knowledge" of his injury, which is information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry. Asbestos Plaintiffs v. Borden, Inc., 01-1379, pp. 3-4 (La.App. 4 Cir. 8/14/02), 826 So.2d 581, 586; Adams v. First National Bank of Commerce, 93-2346, 94-0486 (La.App. 4 Cir. 9/29/94), 644 So.2d 219, 223.
Considering the record, we agree with the trial court that Ms. Wilhike failed to prove that her cause of action was not "reasonably knowable" to her more than one year prior to her filing the lawsuit in August, 2007. The knowledge that her son had lead poisoning in 2003 was sufficient to prompt some further inquiry or action on her part to determine its source prior to the running of prescription. We find contra non valentum to be inapplicable under these facts. Moreover, because Ms. Wilhike and Ronald ceased residing in the defendants' rental property more than one year prior to filing suit, the doctrine of "continuing tort" has no applicability to this case. Cf. Risin v. DNC Investments, L.L.C., 05-0415 (La.App. 4 Cir. 12/7/05), 921 So.2d 133. Because Ms. Wilhike failed to prove that prescription was suspended, the trial court correctly maintained the defendants' exception.
Accordingly, we affirm the trial court's judgment dismissing plaintiff's action as prescribed.
AFFIRMED.
NOTES
[1] Keishandra Wilhike signed a written agreement leasing 2220 Bienville Street from the Polks from October 10, 2003, until October 31, 2004. Latoya and Ronald Wilhike were listed on the lease agreement as additional residents.
[2] In support of this assertion plaintiff submitted an affidavit from John Oleaga stating that on September 21, 2006, he took paint and soil samples from 2220 Bienville and conveyed them to Jennifer Willis (the plaintiff's attorney); and an October 4, 2006 report of Analysis Laboratories, Inc., indicating that on September 28, 2006, it tested various samples purportedly taken from the exterior of 2220 Bienville, which samples contained lead levels ranging from 0.07 to 0.3 percent. The report also notes that "The HUD regulations for lead content is 0.5 percent."
[3] On November 13, 2003 the child's address is listed as 1227 S. Johnson Street, the residence that LPPP attempted to test. The records indicate that on May 17, 2004, Latoya Wilhike advised the LPPP that she was living at 2220 Bienville and awaiting Section 8 placement. On July 27, 2005, the records note that a relative of Ronald Wilhike confirmed that Ronald's address was 14101 Curran Road.